[No. A042139. First Dist., Div. Two. Nov. 27, 1989.]

JANE JACKSON et al., Plaintiffs and Respondents, v.
JAMES STOCKDALE, as Acting Secretary, etc., et al., Defendants
and Appellants.

COUNSEL

John K. Van de Kamp, Attorney General, Stephanie Wald and Winifred Y. Smith, Deputy Attorneys General, for Defendants and Appellants.

Stephen E. Ronfeldt, Jane Perkins, Stanley Dorn, Kirk McInnis and Sarah Reynoso for Plaintiffs and Respondents.

OPINION

KLINE, P. J.—

### INTRODUCTION

Defendants California Health and Welfare Agency, James Stockdale, Acting Secretary of the Agency, State Department of Finance, and Kenneth Kizer, Director of the Department, appeal the issuance of a preliminary injunction by the Alameda County Superior Court, enjoining appellants "from denying Medi-Cal coverage of root canal treatments and laboratory processed crowns on posterior teeth of adult Medi-Cal recipients unless the requested treatment is not medically necessary or there is a less costly, alternative service that meets the patient's medical needs." At issue in this appeal are certain regulations issued by the agency denying coverage for the above treatments (Cal. Code Regs., tit. 22, § 51307, subd. (d)(4), (5)) and whether such provisions are contrary to coverage provided under the Medi-Cal Benefits Program (Welf. & Inst. Code, § 14000 et seq.) for "[e]mergency and essential diagnostic and restorative dental services . . . ." (Welf. & Inst. Code, § 14132, subd. (h).)[1]

We conclude the challenged regulations are contrary to the intent and language of the statute and so affirm the judgment of the superior court.

### STATEMENT OF FACTS

*Respondent Jane Jackson*

Respondent Jackson is a Medi-Cal recipient. Her dentist, Dr. Mark Maberley, submitted a "Treatment Authorization Request" (TAR) for a

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

permanent laboratory processed crown for Jackson.[2] Jackson suffers from Meniere's syndrome, an inner ear disorder, which causes clamping of her jaw and grinding of her teeth. The grinding and clamping broke the cusp of one of her posterior teeth and displaced three subsequent temporary fills on that tooth. Dr. Maberley prescribed a permanent laboratory processed crown to restore and prevent further damage to the tooth. Dr. Maberley explained that extraction was not a viable or appropriate alternative. Since Medi-Cal would not authorize a partial denture for the missing tooth, "extraction will result in a loss of chewing ability and exacerbate decay and deterioration of her gums. Ms. Jackson, due to her condition, is already predisposed to gum problems which could lead to acute and chronic pain. Loss of a tooth will also cause tipping of the tooth behind it, increasing the likelihood of further cracking and creating a perpetual cycle of extraction and tipping." According to Dr. Maberley, insertion of a stainless steel crown onto Jackson's damaged tooth was "not a viable or appropriate alternative to a laboratory processed crown" for three reasons. "First, the stainless steel crown will not mold to Jane Jackson's tooth nearly as well as a laboratory processed crown. The fit is particularly important, since she continuously grinds and clenches her teeth. There is a strong probability that a stainless steel crown would not stay on her tooth for any extended period of time. Second, stainless steel crowns can act as plaque traps and as irritants to the gum. Jane Jackson has a tendency toward gum problems. Third, since [she] has many gold inlays, insertion of the stainless steel crown may cause galvanic shock."

Although Dr. Maberley stated that the laboratory processed crown was medically necessary and there were no other adequate alternatives, the Department of Health Services (DHS) initially denied coverage of the crown. Following an administrative appeal, the hearing officer determined that the challenged regulations (Cal. Code Regs., tit. 22, § 51307, subd. (d)(4), (5)) were invalid and authorized the requested coverage in its "proposed decision." The director of DHS rejected the hearing officer's decision and denied coverage, citing the challenged regulation.

*Respondent Linnea Kilgren*

Respondent Kilgren, a Medi-Cal recipient, sought treatment for an acute infection of the gum surrounding a posterior tooth from her treating dentist, Dr. Thomas Jarvis. She was suffering intense pain, and Dr. Jarvis believed that without treatment she would have suffered several days of intense pain and possible oral sinus infection which could have precipitated sufficient

---

[2] The TAR also requested payment for a night-guard. The night-guard request was not at issue in the trial court.

pressure on the optic artery to cause loss of her right eye. Therefore, Dr. Jarvis performed emergency root canal treatment. Dr. Jarvis explained that while extraction would have prevented the above problems or complications, "this would have caused a forward tilting of the second molar behind it. Because Ms. Kilgren grinds her teeth at night, the forward tilt would cause sideways pressure on her second molar against the opposing lower molars. It is more than likely this sideways force on the upper molar would eventually cause enough trauma to the tooth to cause the pulp tissue to necrose and eventually abscess." Based upon his experience and Kilgren's dental history, Dr. Jarvis stated that root canal therapy was "the only proper procedure" and was "medically necessary" because she would have lost at least one more tooth without the treatment.

DHS nonetheless denied coverage of the emergency root canal treatment.

*Respondent Virginia Stockstill*

Respondent Stockstill, a Medi-Cal recipient, sought treatment from her dentist, Dr. Kimball Kaufman, for an impaired posterior tooth. Dr. Kaufman placed a temporary crown on the tooth to relieve Stockstill's "extreme discomfort." Dr. Kaufman submitted a TAR for a permanent crown, believing it to be " 'the only procedure which would adequately correct the impairment and prevent impairment of the claimant's oral health.' " Stockstill had already lost approximately four temporary crowns placed on this tooth. Dr. Kaufman stated that " 'the only adequate restoration would be a permanent crown. Extraction would result in a loss of chewing ability, forcing the next molar to tip, creating a perpetual cycle of extraction and tipping.' " Further, Dr. Kaufman opined that he had requested the permanent crown for Stockstill as he would have for a similarly situated private patient " 'because I believed it was the most appropriate procedure for [her].' " The proposed decision of the hearing officer held the challenged regulation invalid and authorized coverage. The DHS director rejected this decision and denied coverage on the basis of the challenged regulation.

STATEMENT OF THE CASE

On December 19, 1985, respondents filed their complaint seeking to enjoin appellant agency's refusal to cover the dental services and seeking declaratory relief. Subsequently, the parties entered into a court-approved stipulation in which DHS agreed to amend the challenged regulation to include coverage of medically necessary root canal treatment and laboratory processed crowns, subject to approval of the Department of Finance and the Office of Administrative Law. The stipulation also provided that respondents were to receive treatment regardless whether the agreed-upon

amendments were approved. Pursuant to the stipulation, DHS submitted the amendments to the two agencies. In February 1987, appellant Department of Finance disapproved the proposed regulation as too costly. The Department of Finance estimated the change would result in "additional costs of approximately $460,000 ($230,000 General Fund)" annually.

On November 6, 1987, respondents moved for a preliminary injunction and writ of mandate. On February 25, 1988, the trial court enjoined appellants from denying Medi-Cal coverage of the dental services where the treatment is medically necessary, absent a less costly alternative that meets the patient's medical need. Appellants filed a timely notice of appeal. On October 3, 1988, this court denied respondents' writ seeking to lift the automatic stay on the trial court's order.[3]

### ISSUES

Appellants challenge the issuance of the injunction. They contend: (1) Medi-Cal is only required to provide essential or emergency services "to the extent practicable;" (2) the Legislature did not intend to include root canal treatment or laboratory processed crowns as essential services under section 14132, subdivision (h); (3) the foregoing services are not emergency or essential services within the meaning of that section and Medi-Cal offers less costly alternatives; (4) Medi-Cal is currently providing benefits "to the extent practicable."

Respondents frame the central issue somewhat differently as whether the challenged regulation, by categorically excluding certain dental services from Medi-Cal coverage regardless of their medical necessity, violates the requirement of section 14132, subdivision (h), that emergency and essential dental services be covered.

### I.

The Medi-Cal program is set forth in Welfare and Institutions Code section 14000 et seq. Section 14000 provides in relevant part: "The purpose of this chapter is to afford to qualifying individuals health care and related remedial or preventative services, including related social services which are necessary for those receiving health care under this chapter.

"The intent of the Legislature is to provide, to the extent practicable, through the provisions of this chapter, for health care for those aged and

---

[3] The case became fully briefed on April 11, 1989. On April 21, 1989, we granted a motion to advance the case on calendar.

other persons, including family persons who lack sufficient annual income to meet the costs of health care, and whose other assets are so limited that their application toward the costs of such care would jeopardize the person or family's future minimum self-maintenance and security. It is intended that whenever possible and feasible: [¶] "(a) The means employed shall be such as to allow, to the extent practicable, eligible persons to secure health care in the same manner employed by the public generally, and without discrimination or segregation based purely on their economic disability."

Section 14005 provides in relevant part that "The health care benefits and services specified in this chapter . . . *shall be provided* under this chapter to any person who is a resident of this state and is made eligible by the provisions of this article."

Section 14132, which contains the schedule of benefits, provides in subdivision (h) as follows: "*Emergency and essential diagnostic and restorative dental services, except for orthodontic, fixed bridgework, and partial dentures that are not necessary for balance of a complete artificial denture, are covered, subject to utilization controls.* The utilization controls shall allow emergency and essential diagnostic and restorative dental services and prostheses that are necessary to prevent a significant disability or to replace previously furnished prostheses which are lost or destroyed due to circumstances beyond the beneficiary's control." (Italics added.)

■ A state plan may limit services to those which are "medically necessary." (*Cowan* v. *Myers* (1986) 187 Cal.App.3d 968, 997 [232 Cal.Rptr. 299].) Section 14059.5 provides: "*A service is 'medically necessary' or a 'medical necessity' when it is reasonable and necessary to protect life, to prevent significant illness or significant disability, or to alleviate severe pain.*" (Italics added.)

"In 1975, section 14132 was amended, and the provision of most health services was made 'subject to utilization controls.' (Stats. 1975, ch. 1005, § 3, subd. (b), p. 2360.) These controls on the utilization of Medi-Cal services were set out in section 14133. The controls allowed the State to withhold coverage or payment for services which were determined to be medically unnecessary. The 1975 provisions did not define a 'medical necessity.' [¶] In 1982, the Legislature enacted section 14133.3. This section defined the term 'medical necessity' as used in relation to the established utilization controls." (*Cowan* v. *Myers, supra,* 187 Cal.App.3d at pp. 973-974, fn. omitted.) At the time, the definition was limited to services which were "medically necessary to protect life or prevent significant disability . . . ." (Former § 14133.3.) In 1985, the Legislature enacted section 14059.5, expanding the definition of "medical necessity" by providing: "A

service is 'medically necessary' or a 'medical necessity' when it is reasonable and necessary to protect life, to prevent significant illness or significant disability, or to alleviate severe pain." This definition was incorporated into section 14133.3 governing utilization controls.

Title 22, California Code of Regulations, section 51307, subdivisions (d)(4) and (5) denies Medi-Cal coverage for the following: "(4) Root canal treatment for posterior teeth for adults, except when the subject tooth is acting as an abutment for an existing satisfactory dental prosthesis or will act as such for a covered dental prosthesis" and "(5) Laboratory processed crowns for posterior teeth, except those posterior teeth which act as an abutment for an existing satisfactory dental prosthesis or will act as such for a covered dental prosthesis."

We agree with respondents and the trial court that the fatal defect of the challenged regulation is its categorical exclusion of coverage for root canal treatments or laboratory processed crowns regardless of demonstrated medical necessity.

A substantial portion of appellants' opening brief is devoted to the proposition that the state need not provide dental services such as root canal treatments or laboratory processed crowns if it is not financially practicable to do so.

Clearly, the state need not have included dental services at all in the Medi-Cal Program. As has been pointed out, there are " 'two levels of judgment as to medical necessity in the statutory scheme. The first is the macro-decision by the legislature that only certain kinds of medical assistance are deemed sufficiently necessary to come under the coverage of its plan. The second is the micro-decision of the physician, that the condition of his patient warrants the administering of a type of medical assistance which that plan makes available.' " (*Cowan* v. *Myers, supra,* 187 Cal.App.3d at p. 978, quoting *Preterm Inc.* v. *Dukakis* (1st Cir. 1979) 591 F.2d 121, 125.)

As stated in *Cowan* v. *Myers, supra,* 187 Cal.App.3d at page 980: "A state may place a generic limit on Medicaid services based upon a judgment as to the degree of medical necessity of those services, so long as it does not discriminate on the basis of the specific medical condition which occasions the need."[4]

---

[4] Our disposition renders it unnecessary to address respondents' contention that refusal to cover root canal treatments for posterior teeth of adults while providing coverage of root canal treatments for children under age 18 and for adult anterior teeth is unjustifiable discrimination under *Cowan* v. *Myers, supra,* 187 Cal.App.3d 968.

Respondents, who do not challenge the state plan, concede that "the discretion to develop that plan, and the extent to which federal regulations may restrict that discretion, are not at issue." Rather, they contend that 14132, subdivision (h) includes root canal treatments and laboratory processed crowns within its scope of services and the regulation therefore conflicts with the state law it purports to implement.[5]

## II.

Section 14132, subdivision (h) requires Medi-Cal coverage of "[e]mergency and essential . . . restorative dental services," excepting only "orthodontic[s], fixed bridgework, and partial dentures that are not necessary for balance of a complete artificial denture . . . ." The Legislature did not exclude laboratory processed crowns or root canal treatments on posterior teeth of adults.

Our primary purpose in construing this statute is to determine the Legislature's intention. (Code Civ. Proc., § 1859; e.g., *California Medical Assn.* v. *Brian* (1973) 30 Cal.App.3d 637, 642 [106 Cal.Rptr. 555]; *State Compensation Ins. Fund* v. *Worker's Comp. Appeals Bd.* (1979) 88 Cal.App.3d 43, 53[152 Cal.Rptr. 153].) Of particular assistance here is the familiar maxim that "[w]hen a statute expresses certain exceptions to a general rule, other exceptions are necessarily excluded." (*City of Coronado*

---

[5] The three principal cases relied upon by appellants are distinguishable on this basis.

In *Dist. of Col. Pod. Soc.* v. *District of Columbia* (D.D.C. 1975) 407 F.Supp. 1259, the podiatric society challenged the state plan because it did not contain all services podiatrists may legally perform under their license. In *Katz* v. *N. M. Dept. of Human Services* (1981) 95 N.M. 530 [624 P.2d 39], plaintiffs challenged the exclusion of physical therapy and chiropractic services. The state legislature had delegated authority to the administrative agency to determine the scope of services to be provided. In contrast, the California Legislature has determined the scope of services to be covered. (§§ 14105, 14132.)

Both cases stand for the proposition that states are not required to fund services made optional by the federal Medicaid program, although those optional services may be desirable or even viewed as medically necessary by physicians. It is left to the states to make the economic decisions involved. These points are not at issue here.

In *Anderson* v. *Director, Dept. of Soc. Serv.* (1980) 101 Mich.App. 488 [300 N.W.2d 921], the state Medicaid plan excluded the services at issue here. Plaintiffs challenged the state plan, arguing that the exclusion violated federal nondiscrimination and sufficiency of scope requirements. (42 C.F.R., § 440.230(b), (c).) Again, respondents here do not challenge the state plan nor do they contend that the state plan conflicts with federal regulations. Rather, they contend the state plan as embodied in section 14132, subdivision (h) includes root canal treatments and laboratory processed crowns within its scope of services and that the challenged regulation conflicts with that section.

Also distinguishing *Anderson* is the absence of any medical testimony in that case showing medical necessity for the requested services. The only medical testimony was provided by the state, showing no harm to the plaintiff. Here, in marked contrast, there was overwhelming medical testimony regarding the medical need for the services and the resulting harm to patients whose requested services are not covered.

v. *California Coastal Zone Conservation Com.* (1977) 69 Cal.App.3d 570, 580 [138 Cal.Rptr. 241]; see also *Crippen* v. *Superior Court* (1984) 159 Cal.App.3d 254, 260 [205 Cal.Rptr. 477].) As the Legislature excluded only three enumerated dental services from the general coverage of emergency and essential restorative dental services, root canal treatment and laboratory processed crowns are covered, if they may be characterized as emergency or essential restorative services.

Appellants contend that the term "essential" means more than simply the most frequently used or best method of treatment. An "essential" service, they maintain, is "a service without which a person can not function." Resting also upon the term "medical necessity" as defined in section 14059.5, appellants maintain that a service is not required under section 14132, subdivision (h) unless the patient's condition is *dire,* and there is no other means of alleviating the problem. Appellants apparently would not deem a service essential unless required to treat a life-threatening condition or significant illness. Appellants' expert witness Dr. Stanley Nuzum, dental program consultant for the Medi-Cal program, conceded during his deposition testimony that if the benefit is not covered by the regulation, the question of medical necessity is not considered. Thus, Medi-Cal would deny coverage for root canal treatment or laboratory processed crowns *regardless of medical necessity.*[6]

We believe that the phrase "emergency and essential . . . restorative dental services" as used in section 14132 must be viewed in its entirety and in light of the articulated purposes of the Medi-Cal program. Appellants ignore the word "restorative." ■ "Restorative," which applies to "something that serves to restore . . . to consciousness or rapidly to normal vigor" (Webster's Third New Internat. Dict. (3d ed. 1965) p. 1936), is authoritatively deemed synonomous with "remedial," "curative," "therapeutic," "healing" and "corrective." (Roget's Internat. Thesaurus (3d ed. 1962) § 685.34, p. 449.) ■ Undisputed evidence presented to the trial court by respondents established that root canal treatments and laboratory processed crowns are both clearly restorative. The purpose of laboratory processed crowns is to restore the natural crown of the tooth. The primary purpose of root canal treatment is to eliminate infected tissue and restore the use of the affected tooth and supporting tissue.

---

[6] "[By Mr. Ronfeldt:] Q. Would it be fair to say that the services, dental services and treatment listed in [title 22, California Code of Regulations, section] 51307[, subdivision (d)] are not covered regardless of medical necessity?

"[Dr. Nuzum:] A. Up to this point this has been my interpretation. First we decide whether there is a covered benefit, then we decide whether there is sufficient documentation to show that the service is necessary.

"Q. If it is not a covered benefit under 51307[, subdivision (d)] you don't get to the second point regarding the medical necessity, is that correct?

"A. That's correct."

Further, the express purpose of the Medi-Cal Act is to afford necessary health care to needy persons and, where feasible, to provide that care without discrimination or segregation on the basis of economic disability. (§ 14000, subd. (a).) The "California Legislature's intent, in enacting the Medi-Cal Act, was to provide 'mainstream' medical care to the indigent." (*Wickline* v. *State of California* (1986) 192 Cal.App.3d 1630, 1646 [239 Cal.Rptr. 810]; see *California Medical Association* v. *Brian, supra,* 30 Cal.App.3d 637, 642.) The dental experts who testified all acknowledged that "mainstream" dental care normally provides root canal treatment and laboratory processed crowns on restorable posterior teeth of adults. As stated by Dr. Jendresen, "Modern mainstream dental care is focused on restoration of the patient's natural tooth and maintenance of the natural arch."

■ Finally, while we agree that the word "essential" means more than simply the most common or preferred method of treatment, it must at a minimum include the concept of "medical necessity." Accordingly, the Legislature must have intended section 14132, subdivision (h) to cover, as an essential restorative dental service, mainstream restorative dental procedures or treatments when "medically necessary to prevent significant illness, to alleviate severe pain, to protect life, or to prevent significant disability" where no less costly alternative meets the patient's need.

■ Respondents' treating physicians and two eminent dental experts supported respondents' contention that in many instances root canal treatment and laboratory processed crowns are essential restorative dental services, medically necessary within the definition of section 14132 and that suggested alternatives, such as extraction in the case of root canal treatment or stainless steel crowns in the case of laboratory processed crowns, are not adequate to meet the patient's medical need.

Appellants vigorously dispute the testimony of respondents' expert witnesses, Drs. Max Schoen and Malcolm D. Jendresen,[7] as well as that of the three treating dentists, and rely upon the declaration of Dr. Stanley Nuzum, dental program consultant for the Medi-Cal program.

■ Clearly, the conflict between the parties' experts as to the medical necessity of root canals and laboratory processed crowns and the adequacy of covered alternatives presents a factual dispute. The trial court, which explicitly rejected Dr. Nuzum's statements regarding the adequacy of alternatives covered by the regulations, resolved that dispute in favor of

---

[7] Dr. Jendresen is chairman of the department of restorative dentistry at the school of dentistry, University of California at San Francisco. Dr. Schoen is professor emeritus at the school of dentistry and public health at the University of California at Los Angeles.

respondents and against appellants. We may not reweigh the evidence or substitute other inferences for those reasonably drawn by the trier of fact. (*Darling* v. *Caterpillar Tractor Co.* (1959) 171 Cal.App.2d 713, 721 [341 P.2d 23]; *Alderson* v. *Alderson* (1986) 180 Cal.App.3d 450, 465 [225 Cal.Rptr. 610]; *Kroopf* v. *Guffey* (1986) 183 Cal.App.3d 1351, 1356 [228 Cal.Rptr. 807] [same standard of review for conflicts in declarations].)

■ Respondents presented substantial evidence that root canal treatment and laboratory processed crowns are often medically necessary and that frequently there are no alternatives that adequately meet the patient's medical need. The trial court carefully framed its injunctive relief, to enjoin appellants from denying coverage of these services "unless the requested treatment is not medically necessary or there is a less costly, alternative service that meets the patient's medical needs."

We agree with the trial court that the categorical exclusion of root canal treatment and laboratory processed crowns from Medi-Cal coverage is unlawful. The challenged regulations (Cal. Code Regs., tit. 22, § 51307, subd. (d)(4), (5)) conflict with the statutory mandate of section 14132, subdivision (h) covering "[e]mergency and essential . . . restorative dental services . . . , subject to utilization controls." The utilization controls in place for determining the medical necessity of particular treatment or the availability of a suitable alternative, appear adequate to allow appellants to identify particular instances where the treatment is unnecessary or where an alternative would be appropriate. However, in general, the determination whether a particular treatment is medically necessary for a particular patient is part of the "micro-decision" that must be left to the treating dentist.

## III.

Appellants argue that fiscal limitations and the legislative direction to provide services "to the extent practicable" authorize them to exclude more expensive treatments such as root canals and laboratory processed crowns in an effort to best serve the Medi-Cal population. ■ The relative cost of various treatments was presumably taken into account by the Legislature when it determined the extent of covered dental services. (See *Anderson* v. *Director, Dept. of Soc. Serv., supra,* 300 N.W.2d 921, 924.) In any event, the Legislature, which deliberately deprived the director of the power to prescribe the scope of covered services,[8] has not authorized him to eliminate

---

[8] Prior to 1971, section 14105 authorized the director to "prescribe the policies to be followed in the administration of this chapter . . . *and the scope of the services to be provided* . . . ." (Italics added.) In 1971 the Legislature removed this power from the director and enacted section 14132, which describes the scope of provided services. (Stats. 1971, ch. 577; see Historical Note, West's Ann. Welf. & Inst. Code (1980 ed.) foll. § 14105, pp. 540-541.)

services enumerated in section 14132 on the basis of fiscal considerations.[9] Applicable utilization controls are not based upon the cost of a service, but upon a review of its medical necessity in a particular case. (§ 14133.)

The Legislature manifestly intended that section 14132 cover root canal treatment and laboratory processed crowns. Appellants cannot by regulation evade the legislative mandate. (See *Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 205 [132 Cal.Rptr. 377, 553 P.2d 537]; *Reyna* v. *McMahon* (1986) 180 Cal.App.3d 220, 224 [225 Cal.Rptr. 405]; see also *Morris* v. *Williams* (1967) 67 Cal.2d 733, 737 [63 Cal.Rptr. 689, 433 P.2d 697].)

The judgment is affirmed.

Benson, J., and Peterson, J., concurred.

Appellants' petition for review by the Supreme Court was denied February 1, 1990.

---

[9] In section 14120, the Legislature has detailed the manner in which any problem of insufficient funding for the program is to be handled. In a fiscal crisis, the director is authorized to reduce payments for services up to 10 percent. If that step is insufficient to bring the program within available funds, the director may postpone elective services in the schedule of benefits. The director is not authorized to eliminate any particular service. (§ 14120, subd. (c).)