[No. A096577. First Dist., Div. Five. June 26, 2002.]

VERA BLUE et al., Plaintiffs and Appellants, v.
DIANA BONTA´, as Director, etc., Defendant and Respondent.

**COUNSEL**

Protection & Advocacy, Inc., Michael J. Kluk; Public Interest Law Project, Stephen E. Ronfeldt; National Health Law Program and Jane Perkins for Plaintiffs and Appellants.

Bill Lockyer, Attorney General, James M. Humes, Asher Rubin and Cheryl L. Feiner, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**STEVENS, J.**—In this case we conclude the state Department of Health Services (Department) wrongly excluded stairway chair lifts from the scope

of health coverage for the medically indigent, under the terms of the California Medical Assistance (Medi-Cal) program, Welfare and Institutions Code section 14000 et seq.

Appellants Vera Blue (Blue) and two nonprofit organizations, the Center for Independent Living (CIL) and the Independent Living Resource Center (ILRC), brought a petition for writ of mandate, in which appellants sought to compel respondent Director of the Department to pay for the costs of providing stairway chair lifts to certain medically indigent and disabled persons covered by the Medi-Cal program. The superior court initially ruled that a stairway chair lift was a covered Medi-Cal benefit, and that Blue was entitled to relief. However, after the Department amended its regulations to specifically exclude such coverage, the court ruled that other medically indigent patients were not generally entitled to this coverage.

We hold that the Department could not exclude such coverage by its new regulation, and we therefore reverse the ultimate legal ruling of the trial court.

I. FACTS AND PROCEDURAL HISTORY

The relevant facts are not in dispute. Blue is covered by the Medi-Cal health benefits program for the medically indigent. She suffers from osteoarthritis and other health conditions, which make it difficult or impossible for her to ascend and descend stairs without assistance, although she can walk on a level surface by using her walker. She has resided for many years in her daughter's home, which is a split-level structure in which the kitchen and main living areas are on the lower floor, while the bedrooms and only bathroom are on the upper floor. Blue's daughter worked full-time outside the home, and was not able to assist her mother up and down the stairs during the workday. In June 1997, Blue fell while attempting to climb the stairs, and broke her collar bone. After that fall, she had to spend her days on the upper floor, and was generally unable to cook or leave the home in the event of a daytime emergency.

On August 18, 1997, Blue's health care provider, Western Rehab Systems, filed a treatment authorization request (TAR) with the Department, seeking to obtain financial resources for the purchase of an Access Stairway Lift. This item of machinery, also called a stair lift, motorized stair lift, stair glide, or stair glider, is a mechanized chair apparatus running on a track or rail along the stairs. The stair lift can be installed and removed relatively easily, and is specifically designed to help patients go up and down stairs. The TAR was accompanied by a letter from Blue's physician, explaining the

need for such a stair lift to safely carry Blue up and down the stairs and avoid another injury, or the need to place her in an assisted living environment such as a nursing home.

On August 22, 1997, a Medi-Cal consultant acting for the Department denied the TAR for the stair lift, stating that the stair lift was not an authorized Medi-Cal benefit. Blue's provider then filed an initial administrative appeal. The initial appeal was denied by a director in a Medi-Cal field office on October 28, 1997, on the grounds that such a stair lift was not covered by Medi-Cal, because it would constitute an alteration or improvement to real property, which is not generally covered.

Blue requested a hearing before an administrative law judge (ALJ). The ALJ ruled in her favor, finding that the stair lift was not a fixture added to real property, since it could be installed and removed. The ALJ analogized the stair lift to a wheelchair, which is a covered benefit under Medi-Cal as a necessary means of allowing a person to safely move about the home. According to the ALJ's opinion, Medi-Cal was required to cover the expense of the stair lift because it qualified as "durable medical equipment."

The director exercised her discretion to overrule the ALJ's decision, and she issued a "Director's Alternate Decision" ruling against Blue. The director's decision found the stair lift constituted a modification or alteration to real property.[1] In addition, even if such a stair lift did not constitute a modification to real property because it could be easily removed, the director concluded that the stair lift also did not qualify for coverage as it was not used primarily for health care, and thus was not a covered Medi-Cal benefit.

Blue next filed a petition for writ of mandate in the superior court, in which she sought to challenge the director's administrative decision as to herself and all other "similarly situated recipients." The two nonprofit organizations, CIL and ILRC, also appeared as petitioners who were seeking relief for their respective members.

The superior court initially granted the petition as to Blue, and issued a peremptory writ of mandate directing the Department to provide payment for her stair lift, because the stair lift constituted durable medical equipment. The Department agreed to stipulate to pay for Blue's stair lift, in obedience to the trial court's issuance of the writ. Similar relief was at first denied as to all other persons, as insufficient evidence had been adduced as to the needs of any other persons.

---

[1]The Department does not repeat this argument on appeal, apparently in light of evidence that such a lift may be readily installed and removed.

Blue and the two nonprofit organizations then moved to file an amended and supplemental petition. The declaration supporting the motion advised that the Department had recently promulgated a new "emergency" regulation, which we discuss in more detail in part II of this opinion, specifically stating that stairway chair lifts would not be covered by Medi-Cal in the future. It therefore became necessary to file an amended petition to challenge the validity of the Department's new regulation barring Medi-Cal coverage of stairway chair lifts. Appellants' motion to file the amended petition was granted.

Following a hearing on the amended petition, the trial court upheld the validity of the Department's new regulation disallowing coverage of stairway chair lifts. In particular, the court ruled that the Department did not abuse its legal discretion in promulgating the new regulation. A judgment denying the petition was entered, and this appeal followed.

## II. Discussion

### A. *Standard of Review*

■ This appeal raises only issues of law, on a record of undisputed facts. We therefore exercise de novo or independent review. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960].)

### B. *Medi-Cal, Medicaid, and the Definition of "Durable Medical Equipment"*

#### 1. *Medi-Cal and Medicaid*

The state Medi-Cal program implements the federal Medicaid program, established under title XIX of the Social Security Act (42 U.S.C. § 1396 et seq.) (the Medicaid Act), which authorizes the payment of federal funds to states to defray the cost of providing medical assistance to low-income persons. (*Robert F. Kennedy Medical Center v. Belshé* (1996) 13 Cal.4th 748, 751-754 [55 Cal.Rptr.2d 107, 919 P.2d 721] (*Belshé*); *Palmdale Hospital Medical Center v. Department of Health Services* (1992) 8 Cal.App.4th 1306, 1312 [10 Cal.Rptr.2d 926].) The Department administers the state's Medi-Cal program. (See *Belshé, supra,* at pp. 751-754; *Rite Aid of Pennsylvania, Inc. v. Houstoun* (3d Cir. 1999) 171 F.3d 842, 845.)

■ Although California has some latitude in designing its state program, it may not unreasonably or arbitrarily reduce the scope of coverage for a required service so as to discriminate against a specific medical condition or

deny necessary medical coverage. (See *Beal v. Doe* (1977) 432 U.S. 438, 444 [97 S.Ct. 2366, 2371, 53 L.Ed.2d 464] (*Beal*).) "[S]erious statutory questions might be presented if a state Medicaid plan excluded necessary medical treatment from its coverage . . . ." (*Ibid.*) Under federal law, states such as California must also implement a utilization control program to ensure that Medicaid funds are paid only for medically necessary services. To this end, California has established Medicaid utilization controls for its Medi-Cal program, including a prior authorization program, which approves Medi-Cal services before they are rendered, and a postservice prepayment audit, which reviews for medical necessity of the services rendered before payment. (Welf. & Inst. Code, § 14133; Cal. Code Regs., tit. 22, § 51003.)

A health care provider obtains prior approval of services for a Medi-Cal patient by submitting a TAR to a consultant in the local Medi-Cal field office, as occurred in this case. (Cal. Code Regs., tit. 22, § 51003.) The consultant first determines whether the proposed services are medically necessary. If services are approved, the health care provider then receives an approved copy of the TAR. If the TAR is not approved, the matter is subject to administrative review and ultimately judicial review, as we must undertake here. (See *ibid.*)

### 2. *The Scope of Medi-Cal Coverage for "Durable Medical Equipment"*

Title XIX of the Medicaid Act (42 U.S.C. § 1396 et seq.) provides that if a state seeks to cover "home health care services" for the medically indigent, then the state must also provide benefits for "durable medical equipment." (42 U.S.C. §§ 1396d(a)(7), 1395x(m)(5).) Oddly enough, neither the Medicaid Act itself, nor its accompanying Medicaid regulations, specifically define the critical term "durable medical equipment," although a nonexclusive statutory list of representative medical equipment includes "iron lungs, oxygen tents, hospital beds, and wheelchairs." (42 U.S.C. § 1395x(n).) It is left to the states to define the term "durable medical equipment" (sometimes abbreviated as DME) by setting reasonable state standards for coverage. (See generally Comment, *Medicaid and Durable Medical Equipment: An Ongoing Battle Between Expense and Health* (2000) 59 Md. L.Rev. 669.)

California has defined this term, as have many other states, by adopting the definition of "durable medical equipment" from federal regulations governing a different but related federal program, the Medicare program for the elderly. The federal Medicare regulatory definition for "durable medical equipment" is: "equipment, furnished by a supplier or a home health agency, that—[¶] (1) Can withstand repeated use; [¶] (2) Is primarily and customarily used to serve a medical purpose; [¶] (3) Generally is not useful to an

individual in the absence of an illness or injury; and [¶] (4) Is appropriate for use in the home." (42 C.F.R. § 414.202 (2001).)

California requires by statute that "[d]urable medical equipment," be covered by the California Medi-Cal program. (Welf. & Inst. Code, § 14132, subd. (m).) California has also generally defined this term by a long-standing state regulation, based on the federal Medicare regulation, which reads: "Durable medical equipment means equipment prescribed by a licensed practitioner to meet medical equipment needs of the patient that: [¶] (a) Can withstand repeated use. [¶] (b) Is used to serve a medical purpose. [¶] (c) Is not useful to an individual in the absence .of an illness, injury, functional impairment, or congenital anomaly. [¶] (d) Is appropriate for use in or out of the patient's home." (Cal. Code Regs., tit. 22, § 51160.) The trial court initially held that stairway chair lifts met this definition of durable medical equipment.

### 3. *The Department's New "Emergency" Regulation Relating to Stairway Chair Lifts*

After the trial court ruled that stairway chair lifts met the definition of durable medical equipment set forth above, the Department promulgated a new "emergency" regulation (which has since become permanent) amending the basic definition of durable medical equipment in California Code of Regulations, title 22, section 51160. This new regulation reads, in pertinent part: "(e) The following items are not covered by the program: [¶] . . . [¶] (11) Stairway chairlifts, or other devices which are temporarily or permanently affixed to, or installed in, any part of a home, for the purpose of transporting persons between floors. For the purpose of this section 'stairway chairlift' means a chair assembly which moves on a track mounted to a staircase, which connects two floors of a structure." (Cal. Code Regs., tit. 22, § 51321.)

### C. *The Department's Exclusion of Stairway Chair Lifts from the Scope of Medi-Cal Coverage as "Durable Medical Equipment"*

As we have mentioned, *ante,* before the Department's enactment of its new exclusionary regulation, the trial court initially found that stairway chair lifts met the general definition of "durable medical equipment" for purposes of this statute requiring coverage, and the regulations existing at the time Blue first sought coverage. The Department concedes that stairway chair lifts are "durable" and constitute "equipment," but contests whether such lifts serve a "medical" purpose.

The parties have not cited, and our own research has not disclosed, any relevant precedents from California or other states specifically addressing

the question of whether a stairway chair lift constitutes "durable medical equipment." In the absence of relevant legal precedents, we must address this issue of law by reference to the wording of the Medicaid Act itself, together with the California statutes and regulations on point, which define durable medical equipment.

■ "The words of the statute are the starting point. 'Words used in a statute should be given the meaning they bear in ordinary use. . . . If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature. . . .' . . . If the language permits more than one reasonable interpretation, however, the court looks 'to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' . . . After considering these extrinsic aids, we 'must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' " (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977-978 [90 Cal.Rptr.2d 260, 987 P.2d 727], citations omitted.)

### 1. *"The words of the statute are the starting point."*

■ Beginning with the language of the relevant statutes, the Medicaid Act and the statutes defining California's Medi-Cal program, it is apparent that states must provide coverage for "durable medical equipment," which includes a stairway chair lift, for the reasons that follow.

Initially, we note that the Medicaid Act mandates that states such as California which elect to provide home health services must provide coverage for "durable medical equipment." (42 U.S.C. § 1395x(m)(5).) This term is not defined by statute, although a nonexclusive statutory list of representative medical equipment includes "iron lungs, oxygen tents, hospital beds, and wheelchairs." (42 U.S.C. § 1395x(n).)

California echoes this federal mandate, requiring that "[d]urable medical equipment" be covered by the California Medi-Cal program. (Welf. & Inst. Code, § 14132, subd. (m).) Although California has also not defined that term by statute, it previously adopted long-standing regulations defining "durable medical equipment" as applying to equipment that "(a) Can withstand repeated use. [¶] (b) Is used to serve a medical purpose. [¶] (c) Is not useful to an individual in the absence of an illness, injury, functional impairment, or congenital anomaly. [¶] (d) Is appropriate for use in or out of the patient's home." (Cal. Code Regs., tit. 22, § 51160.)

The language of the relevant statutes and applicable regulations thus discloses a clear intent to broadly cover all "durable medical equipment" without any expressed limitation.

2. *"Words used in a statute should be given the meaning they bear in ordinary use."*

The words of the relevant statutes also must be given the meaning they bear in ordinary use. In particular, the parties dispute the meaning of the term "medical" as used in the phrase "durable medical equipment." The Department asserts that a stairway chair lift is not "medical" equipment, under the Department's own specialized and restrictive meaning of that term, which is limited to equipment which cures a medical condition.

We however must give the word "medical" its ordinary sense, as referring more usually and broadly to the treatment, cure, or alleviation of any health condition, including a disability such as the inability to climb stairs. In accord with this broader definition of the term "medical," California has defined "medical necessity" in Welfare and Institutions Code section 14059.5, in the following manner: "A service is 'medically necessary' or a 'medical necessity' when it is reasonable and necessary to protect life, to prevent significant illness or significant disability, or to alleviate severe pain." A stairway chair lift qualifies as "medical" equipment under this definition because it prevents significant disability, and is reasonable and necessary to protect life or prevent injury such as the injury Blue suffered while attempting to use the stairs without a chair lift.

The nonexclusive list of items constituting durable medical equipment, such as wheelchairs and iron lungs, is also consistent with such a broad definition of the statutory term "medical," and requires similar coverage for stairway chair lifts that are prescribed to alleviate medical conditions. Equipment such as iron lungs and wheelchairs would not cure the underlying medical condition, but would help to alleviate the effects of the medical condition by restoring necessary human functions such as respiration or the ability to move about. Similarly, a stairway chair lift alleviates a medical condition such as osteoarthritis by restoring the ability to move about the different levels of a home, where this is medically necessary for a patient.

3. *"Extrinsic aids, including the ostensible objects to be achieved, and the evils to be remedied."*

We could also reach a similar result by another process of statutory interpretation. ██ ██ Under the principle of statutory interpretation

known as *noscitur a sociis* (the term may be defined by reference to its fellow members of a class), we note that the list of representative medical equipment includes items that are medically necessary, and are not commonly used by persons except those suffering from a disabling medical condition. An obvious purpose of the home health care coverage for durable medical equipment is to permit indigent patients who are affected by medical problems to continue to live at home, rather than in an institution. (*Granato v. Bane* (2d Cir. 1996) 74 F.3d 406, 413 (*Granato*).) Therefore, the use of the word "medical" in the phrase "durable medical equipment" was apparently intended to designate items that are medically necessary, are not commonly used by healthy persons, and aid patients in remaining in their homes. A stairway chair lift qualifies under all these criteria.

As in the case of a wheelchair, a stairway chair lift restores mobility lost as a result of a medical condition or disability, enabling the patient to reside at home rather than in an institution. And, as in the case of appellant Blue, a patient uses such a lift to ascend or descend stairs when this is not otherwise possible for the patient due to a medical condition or disability. Persons who do not suffer from a disabling medical condition or injury, and are able to climb stairs on their own, therefore would not find installation of such a chair lift useful in negotiating stairways.

And finally, we point out that the evil to be remedied by the relevant Medicaid and Medi-Cal statutes is the denial of necessary medical equipment for use in home health care, leading to unnecessary disability or institutionalization. The Department may not unreasonably or arbitrarily reduce the scope of coverage for a required service so as to discriminate against a specific medical condition, such as osteoarthritis or other medical conditions preventing normal use of the stairs, nor may the Department deny necessary medical coverage for such conditions. (See *Beal, supra,* 432 U.S. at p. 444 [97 S.Ct. at pp. 2370-2371].)

A stairway chair lift prescribed by a physician for a medical purpose meets the general definition of "durable medical equipment" because the lift: "(a) Can withstand repeated use. [¶] (b) Is used to serve a medical purpose. [¶] (c) Is not useful to an individual in the absence of an illness, injury, functional impairment, or congenital anomaly. [¶] (d) Is appropriate for use in or out of the patient's home." (Cal. Code Regs., tit. 22, § 51160.) And thus we conclude that a stairway chair lift qualifies as "durable medical equipment" by statute, as well as under the Department's general regulatory definition.

### D. *The Department's "Emergency" Regulation Excluding Chair Lifts*

The Department maintains that its new "emergency" regulation excluding stairway chair lifts from Medi-Cal coverage should be followed by

this court, since the Department has made an administrative determination under authority delegated to it by the Legislature. In the Department's view, the scope of our review is quite narrow. We disagree. The question of whether stairway chair lifts constitute "durable medical equipment," on the present undisputed facts, is a purely legal question, not calling for any factual inquiry or specialized administrative expertise. We are not bound by the Department's determination on this issue of law. (*Halaco Engineering Co. v. South Central Coast Regional Com.* (1986) 42 Cal.3d 52, 74 [227 Cal.Rptr. 667, 720 P.2d 15]; *California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 11 [270 Cal.Rptr. 796, 793 P.2d 2]; *East Peninsula Ed. Council, Inc. v. Palos Verdes Peninsula Unified School Dist.* (1989) 210 Cal.App.3d 155, 165 [258 Cal.Rptr. 147]; *Quackenbush v. Mission Ins. Co.* (1996) 46 Cal.App.4th 458, 466 [54 Cal.Rptr.2d 112]; *Creighton v. Regents of University of California* (1997) 58 Cal.App.4th 237, 246 [68 Cal.Rptr.2d 125]; see also *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7-8 [78 Cal.Rptr.2d 1, 960 P.2d 1031]; *Sher v. Leiderman* (1986) 181 Cal.App.3d 867, 881 [226 Cal.Rptr. 698].)

On this issue of the interpretation of the Department's Medi-Cal regulations we are also guided by authority from our own appellate district. In *Jackson v. Stockdale* (1989) 215 Cal.App.3d 1503, 1515 [264 Cal.Rptr. 525] (*Jackson*), Division Two of this district ruled that the Department could not exclude from Medi-Cal coverage certain restorative dental services, such as root canal work, because the Legislature had specifically mandated this coverage. *Jackson* held that the Department lacked the power to restrict this coverage by regulation, because the Legislature had explicitly declined to give the Department authority to determine the scope of coverage for Medi-Cal procedures authorized by statute. (*Ibid.*) Similarly, in the present case, the Legislature has by statute authorized coverage for durable medical equipment, and the Department lacked authority to restrict the scope of that coverage by its new emergency regulations. (*Jackson, supra,* at pp. 1515-1516.)

This court (Div. Five) cited and followed *Jackson* in another decision discussing the topic of Medi-Cal coverage for "durable medical equipment," in *Ruth v. Kizer* (1992) 8 Cal.App.4th 380, 386-390 [10 Cal.Rptr.2d 274] (*Ruth*). There, the court was concerned with whether the Department could exclude coverage for certain oxygen therapy equipment, which was otherwise defined as "durable medical equipment," but had been excluded by a departmental regulation barring coverage for experimental or investigational therapies. The Department was found to lack the authority to exclude coverage for such medical equipment as investigational therapy. Exercising independent review, we ruled that oxygen therapy equipment could meet the

definitions for the required investigational coverage as "durable medical equipment."

We reach a similar result in this case, concluding that a stairway chair lift does constitute durable medical equipment, which must be covered by statute, and which cannot be excluded by regulation. (See *Ruth, supra,* 8 Cal.App.4th at pp. 386-390; *Jackson, supra,* 215 Cal.App.3d at p. 1515.) A regulation that is inconsistent with the statute it seeks to implement is invalid. (*Mooney v. Pickett* (1971) 4 Cal.3d 669, 679 [94 Cal.Rptr. 279, 483 P.2d 1231].) We therefore cannot agree that the Department's new regulation validly excluded coverage for stairway chair lifts. Our conclusion on this point renders moot the other arguments offered by the appellants, and we need not address them. (See *Finnie v. Town of Tiburon* (1988) 199 Cal.App.3d 1, 10 [244 Cal.Rptr. 581].)

### E. *The Department's Other Arguments Are Without Merit*

The Department contends our ruling will set off a parade of horribles, leading to mandated coverage of numerous outlandish items as "durable medical equipment," such as an elevator, a dumbwaiter, a special large television for patients with poor eyesight, carpeting, or an electric toothbrush for one who has trouble brushing her teeth. However, the Department's apparent fears in this respect are overstated. None of these items qualify as "durable medical equipment," because they are all regularly and primarily used by persons who do not have a specific medical need for them.

Moreover, our ruling leaves considerable discretion in the hands of the Department to prevent abuses. The Department retains the discretion to restrict stair lift coverage to those Medi-Cal patients for whom it is actually medically necessary, and may subject this coverage to cost utilization controls, if other more economical means exist to remedy the problem. For instance, where a residence has its kitchen, main living area, a bathroom, and a room usable as a bedroom on the ground floor, the Department need not provide a stair lift for access to an upper floor, attic, or basement.

The Department claims that Blue and those like her, who live in two-story homes, have simply made a "lifestyle choice" to reside in such dwellings. However, the evidence shows that Blue has lived in her current residence for many years. She resides with her daughter, who provides necessary care and companionship. Her medical clinic, church, and friends are all close by. Blue can no longer live alone. The only choice Blue has, if she could not obtain a chair lift, would be to live in a nursing home. This alternative would be considerably more expensive for Medi-Cal, and would not be the preferred

medical outcome for patients who are still capable of living independently with some minor assistance. Indeed, the very purpose of the home health care coverage for durable medical equipment is to allow the indigent who are afflicted with medical problems to continue to live at home, rather than in an institution. (See *Granato, supra,* 74 F.3d at p. 413.)

■ We certainly agree that the Department need not provide coverage for stairway chair lifts if only a lifestyle choice is at stake. There is obviously no medical or financial necessity requiring the Department to provide stair lifts for spry millionaires who wish to visit the turret rooms of their mansions. Durable medical equipment should be provided only to the medically indigent who are found to have a valid medical necessity requiring its use. By our ruling, we do not suggest that fiscal considerations are entirely irrelevant in deciding whether coverage for such equipment is to be afforded. Where it is possible, easy, and inexpensive for a patient to move to a one-story dwelling or a downstairs bedroom, that may well be the preferred alternative. However, the Department may not categorically exclude coverage for stairway chair lifts which are medically necessary.

Finally, we point out that our ruling is subject to legislative oversight. Congress or the Legislature may restrict the scope of medical equipment coverage if either so desires. We simply hold that, under present law, the Department may not arbitrarily restrict this coverage by regulation, because such coverage for durable medical equipment has been legislatively mandated. (See *Jackson, supra,* 215 Cal.App.3d at pp. 1515-1516; *Ruth, supra,* 8 Cal.App.4th at pp. 386-390.)

III. DISPOSITION

The judgment is reversed. The matter is remanded to the trial court with instructions to grant the petition for writ of mandate.

Jones, P. J., and Gemello, J., concurred.