[No. D033709. Fourth Dist., Div. One. Oct. 31, 2000.]

CHARLES ALESI, Plaintiff and Appellant, v.
BOARD OF RETIREMENT OF THE SAN DIEGO CITY EMPLOYEES'
RETIREMENT SYSTEM, Defendant and Respondent.

598

**COUNSEL**

Lemaire, Faunce, Pingel & Singer, Edward L. Faunce and Larry J. Roberts for Plaintiff and Appellant.

Loraine E. Chapin and Roxanne Story Parks for Defendant and Respondent.

**OPINION**

**HUFFMAN, J.**—Plaintiff Charles Alesi appeals a judgment denying his petition for a writ of mandate (Code Civ. Proc., § 1094.5) to compel defendant Board of Retirement of the San Diego City Employees' Retirement System (the Board) to set aside its decision denying him industrial disability retirement benefits. Alesi applied for a disability retirement after he became incapacitated by a knee injury. The Board denied Alesi's application based on an adjudicator's findings that Alesi's employment with the City of San Diego (the City) "was not the substantial and significant factor in bringing out the permanent physical incapacities." Alesi contends (1) the San Diego City Charter (Charter) mandates that a disability retirement be granted if the employee's disability is a substantial result of employment; and (2) the Charter controls over a conflicting ordinance that Alesi interprets as allowing a disability retirement only if the employee's disability was caused solely by an employment-related injury. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Alesi concedes that the court's factual findings are supported by substantial evidence and therefore controlling. Accordingly, the relevant facts are undisputed.

Alesi injured his left knee several times before beginning his employment with the City. He dislocated it in 1986, reinjured it while jet skiing in 1988, and injured it again in a beach football game in 1989. As a result of the 1989 injury he underwent ligament reconstruction surgery and was off work for one year.

In October 1990 the City hired Alesi as a "Utility I Worker." His duties included cleaning storm drains and performing street maintenance. In March

1994 Alesi reinjured his left knee at work when he slipped and fell as he was stepping out of a truck. He returned to work on light duty after undergoing surgery for that injury. In June 1995 he suffered additional knee problems as the result of operating a jack hammer at work and attempting to jet ski. He returned to work after undergoing another surgery and in August 1995 reinjured the knee getting into a truck.

In April 1996 Alesi applied for an industrial disability retirement based on knee injury.[1] The Board referred the application to an adjudicator who conducted an evidentiary hearing and found that Alesi was permanently incapacitated from performing the activities required by his job with the City. The adjudicator further found, however, that Alesi failed to sustain his burden of proving his disability arose out of or in the course of his employment. In his proposed findings and decision, the adjudicator stated: "This finding is based on the fact that Government Code § 31720 [and San Diego Municipal Code section] 24.0501 requires [sic] the incapacity to be 'the' result rather than 'a' result of the workplace. In short, [Alesi's] employment was not the substantial and significant factor in bringing out the permanent physical incapacities."

The Board adopted the adjudicator's proposed decision and denied Alesi's application for a disability retirement. Alesi filed a petition for writ of mandate in superior court seeking review of the Board's decision. Applying the independent judgment standard of review, the court concluded:

"The weight of the evidence supports the finding that Mr. Alesi's permanent incapacity was not 'the' result of injury arising out of employment as required under San Diego Municipal Code § [24.0501]. There is evidence to show that the employment may have aggravated the injury. However, mere aggravation is not compensable under the retirement scheme in place.

"The court finds the weight of the evidence supports the findings of the [adjudicator] as approved by [the Board] and thus denies the peremptory writ of mandate."

DISCUSSION

Charter section 141 authorizes the San Diego City Council to enact an ordinance establishing a retirement system for city employees. In relevant part Charter section 141 provides: "The Council may also in said ordinance provide: [¶] (a) For the retirement with benefits of an employee who has become physically or mentally disabled by reason of bodily injuries received

---

[1]Alesi also claimed a shoulder injury but withdrew that claim.

in or by reason of sickness caused by the discharge of duty or as a result thereof to such an extent as to render necessary retirement from active service."

San Diego Municipal Code section 24.0501,[2] which sets forth the disability retirement requirements for city employees, provides, in relevant part: "(b) Any member of the Retirement System enrolled on or after September 3, 1982, permanently incapacitated from the performance of duty as the result of injury or disease arising out of or in the course of his or her employment and; [¶] (1) not arising from a preexisting medical condition . . . [¶] . . . shall be retired for disability with retirement allowance, regardless of age or amount of service. For purposes of this section, a preexisting medical condition is defined as any condition which occurred or existed prior to membership in the Retirement System."

 Alesi relies on *Montgomery v. Board of Admin., etc.* (1939) 34 Cal.App.2d 514 [93 P.2d 1046] for the proposition that the city council may not pass any ordinance that conflicts with the provisions of the Charter. (*Id.* at p. 521.) Alesi contends section 24.0501 impermissibly conflicts with Charter section 141 with respect to disability retirement because section 24.0501 requires that the qualifying disability be "*the* result" of an injury arising out of employment whereas Charter section 141 authorizes the City to provide disability retirement for a disability that is "*a* result" of an employee's "discharge of duty." He argues that if an employee's disability need only be "*a* result" of employment-related injury for the employee to qualify for disability retirement, the disability retirement is available where employment-related injury is one of several causes of the disability, whereas if the disability must be "*the* result" of employment-related injury, such injury must be the *sole* cause of the disability for the employee to qualify for disability retirement. Thus, Alesi argues, the Charter authorizes the City to provide disability retirement benefits if an employee's disability was caused *in part* by an employment-related injury, while section 24.0501 inconsistently and impermissibly provides retirement benefits only if the disability was caused *solely* by an employment-related injury.

 "Issues of statutory construction present questions of law, calling for an independent review by an appellate court. [Citations.]" (*Botello v. Shell Oil Co.* (1991) 229 Cal.App.3d 1130, 1134 [280 Cal.Rptr. 535].) The canons of statutory construction apply equally to the construction of ordinances and charters. (*Swift v. County of Placer* (1984) 153 Cal.App.3d 209, 213 [200 Cal.Rptr. 181] [ordinances]; *Currieri v. City of Roseville* (1970) 4

---

[2]All further section references are to the San Diego Municipal Code unless otherwise specified.

Cal.App.3d 997, 1001 [84 Cal.Rptr. 615] [charters].) Words of a statute are to be given a plain and commonsense meaning. When they are clear and unambiguous, there is no need for judicial construction of the statute. (*Quarterman v. Kefauver* (1997) 55 Cal.App.4th 1366, 1371 [64 Cal.Rptr.2d 741]; *Hughes v. Board of Architectural Examiners* (1998) 17 Cal.4th 763, 775 [72 Cal.Rptr.2d 624, 952 P.2d 641].)

■ We conclude the phrase "the result" in section 24.0501 does not create a conflict between that ordinance and Charter section 141. Alesi's construction of the phrases "*the* result" and "*a* result" in the context of section 24.0501 and Charter section 141 is derived from the interpretation of Government Code section 31720 in *Heaton v. Marin County Employees Retirement Bd.* (1976) 63 Cal.App.3d 421 [133 Cal.Rptr. 809] (*Heaton*). Government Code section 31720 sets forth the requirements for disability retirement of county employees. At the time *Heaton* was decided the statute provided: " 'Any member permanently incapacitated for the performance of duty shall be retired for disability regardless of age if, and only if: [¶] (a) His incapacity is a result of injury or disease arising out of and in the course of his employment . . . .' " (*Heaton, supra,* 63 Cal.App.3d at p. 426.) The main issue in *Heaton* was whether an employee qualified for a disability retirement under Government Code section 31720 where employment was one of a variety of causes of the employee's disability or whether employment had to be the sole or at least substantial cause of the disability. (*Heaton, supra,* 63 Cal.App.3d at pp. 425-426.) Interpreting the phrase "as a result" in Government Code section 31720, *Heaton* concluded that "[h]ad the Legislature determined that the incapacity had to be completely service-connected the Legislature would have stated that [the employee's] incapacity must be *the* result of his employment [instead of *a* result]." (*Heaton, supra,* 63 Cal.App.3d at p. 428.) *Heaton*'s interpretation of the phrase "a result" was followed without further analysis in *Gelman v. Board of Retirement* (1978) 85 Cal.App.3d 92, 96-97 [149 Cal.Rptr. 225] and noted in passing in *Bowen v. Board of Retirement* (1986) 42 Cal.3d 572, 575-576 [229 Cal.Rptr. 814, 724 P.2d 500].

*Heaton*'s analysis confuses the distinct concepts of cause and effect. Because a "result" clearly falls into the latter category, *Heaton*'s view that significant information about *causation* is communicated by the article modifying the word "result" is puzzling. When the phrases "*a* result" and "*the* result" are interpreted in accordance with their plain and commonsense meaning, the only distinction between them is that the former suggests one of two or more *results* whereas the latter suggests a sole result. Even that

distinction is not very meaningful, however, as either phrase can be used to refer to one of several results.[3]

In any event, whether something is referred to as "*a* result" of X or "*the* result" of X, the reference communicates nothing about whether X was the sole *cause* or one of several causes of the result. Notwithstanding that linguistic fact, *Heaton* interpreted the articles "a" and "the" in the phrases "a result" and "the result" as referring to the *cause* or *causes* of the injury rather than the noun they modify, namely, "*result*." I.e., *Heaton*, construed the phrase "incapacity is *a* result of injury . . . arising out of . . . employment" to mean the injury arising out of employment is a *cause* (i.e., one of more than one cause) of the incapacity, and construed the phrase "incapacity is *the* result of injury arising out of employment" (had the Legislature chosen to use it) to mean the injury arising out of employment was the sole cause of the disability. (*Heaton, supra*, 63 Cal.App.3d at p. 428.)

*Heaton*'s interpretation is not consistent with the plain meaning of the phrases "a result" and "the result" as both phrases refer to *effect* rather than *cause*. Thus, in the context of Charter section 141 and section 24.0501, neither phrase is determinative of whether an employment-related injury must be the *sole* cause, a *substantial* cause, or merely *a* cause of an employee's disability to entitle the employee to a disability retirement. It follows that Alesi's perceived conflict between Charter section 141 and section 24.0501 does not exist.

Although the phrase "as the result of injury" in section 24.0501 provides no real guidance as to whether an employment-related injury must be the *sole* cause of an employee's disability to entitle the employee to a disability retirement, section 24.0501 expressly limits disability retirement to employees whose disabling injuries do not arise from a preexisting medical condition. That limitation is permissible because it is not expressly prohibited by the charter. ■ As this court noted in *Grimm v. City of San Diego* (1979) 94 Cal.App.3d 33, 38 [156 Cal.Rptr. 240]: "A city council's decision regarding a pension system must be upheld unless expressly prohibited by the city charter. [Citation.] 'The charter operates not as a grant of power, but as an instrument of limitation and restriction on the exercise of power over all municipal affairs which the city is assumed to possess; and the enumeration of powers does not constitute an exclusion or limitation. [Citations.] . . . All rules of statutory construction as applied to charter provisions [citations] are subordinate to this controlling principle. . . . A construction in favor of the exercise of the power and against the existence of any

---

[3]For example, the statement "Bob missed the meeting as the result of a flat tire" does not necessarily communicate that Bob's missing the meeting was the *only* result of his flat tire.

limitation or restriction thereon which is not expressly stated in the charter is clearly indicated. . . . Thus in construing the city's charter a restriction on the exercise of municipal power may not be implied.' [Citations.]" ■ Because the Charter does not expressly restrict the City from requiring an applicant for disability retirement to show that an employment-related injury was the substantial cause of his or her disability[4] and that the disability did not arise from a preexisting medical condition, the limitations on disability retirement imposed by section 24.0501 are valid.

The court found that Alesi's disability arose from a preexisting medical condition and was merely aggravated by his employment-related injury. In its statement of decision the court noted: "The City is not obligated to pay disability pension for all injuries merely when they are triggered by a work-related accident. This is further bolstered by . . . subsection (b)(1) [of section 24.0501], which provides that the injury cannot 'arise' from a preexisting medical condition." In concluding the evidence supported the adjudicator's findings and decision that Alesi failed to show his injuries arose from his employment, the court cited medical evidence that Alesi's disability was primarily caused by the knee injury he suffered before his employment with the City. As noted, Alesi does not dispute the court's factual findings.

Although the court did not expressly deem Alesi's original knee injury a "preexisting medical condition," it clearly falls within section 24.0501's definition of that term—i.e., "any condition which occurred or existed prior to membership in the Retirement System." Based on the finding that his disability arose from his original knee injury and was merely aggravated by his employment-related injuries, the court properly denied Alesi's petition for a writ of mandate.

### DISPOSITION

The judgment is affirmed. Each party shall bear its own costs on appeal.

Benke, Acting P. J., and McIntyre, J., concurred.

A petition for a rehearing was denied November 21, 2000, and appellant's petition for review by the Supreme Court was denied February 14, 2001.

---

[4]The Board represents that as a matter of long-standing practice it has interpreted section 24.0501 as requiring an applicant for disability retirement to show that an employment-related injury was the *substantial cause* of his or her disability.