[No. C040407. Third Dist. Nov. 20, 2002.]

MARY C. MAFFEI, Plaintiff and Respondent, v.
SACRAMENTO COUNTY EMPLOYEES' RETIREMENT SYSTEM,
Defendant and Appellant.

COUNSEL

Robert A. Ryan, Jr., County Counsel, and J. Steven Burris, Deputy County Counsel, for Defendant and Appellant.

Joan M. Maredyth and Michael McCallum for Plaintiff and Respondent.

OPINION

NICHOLSON, J.—To encourage career public service, the Legislature has created a system in which an employee can go from one job in the public sector to another with little effect on the employee's retirement benefits. (See Gov. Code, § 31830.) This system of reciprocity between retirement systems makes it possible, for example, for an employee to defer retirement in the first job and then retire from both jobs simultaneously and have the retirement allowance for both jobs be based on the employee's highest compensation for either.

Here, plaintiff Mary C. Maffei, in 1990, resigned her employment with the County of Sacramento (County), where she had been a member of the Sacramento County Employees' Retirement System (SCERS), and took a job as a teacher in the San Juan Unified School District, where she became a member of the State Teachers' Retirement System (STRS). In 1999, the Legislature created reciprocity between SCERS and STRS. (Gov. Code, § 31840.8.) Maffei, who has not yet retired, asserts she is entitled to the benefit of the reciprocity legislation. We agree and affirm.

### BACKGROUND

The facts here are simple and undisputed. Maffei worked for the County for 13 years. During that time, she was a member of SCERS and contributed to the retirement plan. She ended her employment with the County in 1990 by resigning and accepting employment as a teacher in the San Juan Unified School District, where she became a member of STRS. Maffei left her contributions on deposit with SCERS, opting for a deferred retirement. (See Gov. Code, § 31700.) She remains employed as a teacher, for which her compensation is significantly higher than what she received as an employee of the County. It appears from calculations presented to the trial court on behalf of Maffei that, if she is entitled to reciprocal retirement benefits, her retirement from SCERS will be about $700 more per month than it would be without reciprocal retirement benefits.

SCERS recently informed Maffei that she would not have the benefit of Government Code section 31840.8, which was enacted in 1999 and established reciprocity between SCERS and STRS, because she resigned from her employment with the County before 1999. Maffei filed a petition for writ of mandate and complaint for declaratory relief against SCERS, seeking a determination that she will be entitled to reciprocal retirement benefits from SCERS when she retires from teaching.[1] The trial court denied the petition for writ of mandate because SCERS has no present duty to pay Maffei retirement benefits. However, the court entered judgment in favor of Maffei for declaratory relief.

### DISCUSSION

Effective January 1, 1999, the Legislature added Government Code section 31840.8 to the County Employees' Retirement Law of 1937 (CERL),

---

[1]While Maffei's brief refers generally to "reciprocity," she only argues specifically concerning the amount of her retirement allowance. Accordingly, she has not raised, and we do not decide, the issue of how other benefits of reciprocity (for example, the determination of her contributions to STRS) are to be applied under Government Code section 31840.8.

which had previously provided for reciprocity between county retirement systems and the California Public Employees' Retirement System (PERS), to include STRS in the reciprocity provision. It stated: "The provisions of this chapter extending rights to a member of a county retirement system established under this chapter by reason of his or her membership in [PERS] shall also apply to members of [STRS]." (Former Gov. Code, § 31840.8.)[2]

The question presented here is whether an employee who transferred from SCERS (a "county retirement system") to STRS before the addition of Government Code section 31840.8 in 1999 is entitled to the benefit of reciprocity between those two retirement systems. The answer is contained in the CERL, under which SCERS was established and operates. (Gov. Code, § 31450 et seq.)

"Where, as here, the issue presented is one of statutory construction, our fundamental task is 'to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' . . . We begin by examining the statutory language because it generally is the most reliable indicator of legislative intent. . . . We give the language its usual and ordinary meaning, and '[i]f there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs.' . . . If, however, the statutory language is ambiguous, 'we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history.' . . . Ultimately we choose the construction that comports most closely with the apparent intent of the lawmakers, with a view to promoting rather than defeating the general purpose of the statute. . . . Any interpretation that would lead to absurd consequences is to be avoided. . . ." (*Allen v. Sully-Miller Contracting Co.* (2002) 28 Cal.4th 222, 227 [120 Cal.Rptr.2d 795, 47 P.3d 639], citations omitted.) "Any ambiguity or uncertainty in the meaning of pension legislation must be resolved in favor of the pensioner, but such construction must be consistent with the clear language and purpose of the statute . . . ." (*Ventura County Deputy Sheriffs' Assn. v. Board of Retirement* (1997) 16 Cal.4th 483, 490 [66 Cal.Rptr.2d 304, 940 P.2d 891, 91 A.L.R.5th 677], citations omitted.)

Government Code section 31705, a part of CERL, provides: "The retirement allowance shall be calculated according to the provisions of this chapter as they exist at the time of the commencement of the retirement allowance." Maffei has not begun receiving a retirement allowance from SCERS because, when she resigned her job with the County, she deferred

---

[2]The statute was later amended to add the Judges' Retirement System and the Judges' Retirement System II to the reciprocity provision. (Stats. 2001, ch. 433, § 4.)

her retirement. When she retires from both SCERS and STRS simultaneously, she will begin receiving a retirement allowance from SCERS. At that time, the retirement allowance will be calculated according to the provisions of CERL. If, at that point, SCERS and STRS remain reciprocal, as they now are, she will be entitled to the benefit of the reciprocity in determining her retirement allowance.

This is the straightforward answer to the question posed in this case. The plain language of CERL indicates Maffei is not precluded from the benefits of reciprocity because she quit her job with the County before SCERS and STRS became reciprocal. Nonetheless, SCERS urges a different interpretation of CERL by going beyond the plain language and attempting to show a different legislative intent. Because the language of the act plainly shows the Legislature's intent to apply CERL as it exists at the time of retirement to determine the amount of the retirement allowance, we cannot resort to extrinsic aids in determining the legislative intent. (*Mutual Life Ins. Co. v. City of Los Angeles* (1990) 50 Cal.3d 402, 407 [267 Cal.Rptr. 589, 787 P.2d 996] [court not authorized to go beyond plain meaning].)

SCERS frames the issue before us as one of retroactivity of Government Code section 31840.8. It maintains that the section should not be applied retroactively to provide Maffei reciprocity benefits. The flaw in SCERS's argument is that, because the retirement allowance is determined using the law (CERL) as it exists at the time the SCERS member begins receiving the retirement allowance, there is no question of retroactive application. The only relevant question concerns the state of the law at that point, not when the employee transferred from one retirement system to another.

SCERS asserts that two provisions of CERL (Gov. Code, §§ 31835.01, 31461.3), which provide for retroactive application of other parts of CERL, evince the Legislature's intent not to allow retroactive application except when such application is expressly allowed. This argument fails because, as noted, this is not a question of retroactive application. Furthermore, Government Code section 31705 makes it clear that, as a general proposition, the version of CERL existing at the time of retirement is used to determine a member's retirement allowance. Nothing in CERL suggests this general provision concerning determination of the retirement allowance does not apply to Maffei's situation. Accordingly, we reject SCERS's argument that Maffei is not entitled to the benefits of reciprocity. Her retirement allowance will be determined by applying CERL as it exists when she retires.

*Effect on Retirement System*

SCERS contends our interpretation of CERL as allowing Maffei, and presumably others, the benefit of reciprocity would undermine the

actuarial soundness of the retirement system. This is so, SCERS argues, because the contributions to the retirement system were determined actuarially, which did not take into account the increased liability that would come from reciprocity. In support of this argument, SCERS cites primarily to *Board of Administration v. Wilson* (1997) 52 Cal.App.4th 1109 [61 Cal.Rptr.2d 207] (*Wilson*).

In *Wilson*, this court reviewed changes to the state's contributions to PERS. The Legislature initiated a system under which the state would pay its contributions to PERS in arrears. (*Wilson, supra,* 52 Cal.App.4th at pp. 1120-1121.) After concluding that state employees under PERS have a contractual right to an actuarially sound retirement system (*id.* at p. 1135), we concluded that right was actually impaired by the Legislature's change to in-arrears contributions. In arriving at this conclusion, we considered evidence presented by PERS stating that in-arrears contributions from the state would have " 'significant detrimental effects on the financial future of [PERS] . . . .' " (*Id.* at p. 1141.)

SCERS asserts that county employees, as a result of CERL, have a contractual right to an actuarially sound retirement system. (See *Wilson, supra,* 52 Cal.App.4th at pp. 1131-1137 [holding that state employees have a contractual right to an actuarially sound retirement system].) We need not engage in an analysis of whether the rights considered in *Wilson*, which dealt only with PERS and state employees, are equally applicable to county employees under CERL. Indeed, SCERS makes no effort to engage in the analysis. It fails even to provide a pinpoint cite to the discussion of this principle in *Wilson*. Instead, we will assume, for the purpose of this discussion, that a member of SCERS has a contractual right to an actuarially sound retirement system.

SCERS offers no evidence that our interpretation of Government Code section 31840.8 will render it actuarially unsound. Furthermore, the Legislature anticipated CERL would result in retirement systems that must adapt to changing conditions. Each year, the county board of supervisors must adjust rates of interest, member contributions, and county appropriations to maintain the ability to provide benefits without reduction. (Gov. Code, § 31454; see also Gov. Code, § 31454.5 [authorizing additional county appropriation to accommodate specific changes in CERL].)

" 'Under settled California law, "[t]he employee does not obtain, prior to retirement, any absolute right to fixed or specific benefits, but only to a 'substantial or reasonable pension.' " [Citations.] " 'An employee's

vested contractual pension rights may be modified prior to retirement for the purpose of keeping a pension system flexible to permit adjustments in accord with changing conditions and at the same time maintain the integrity of the system. [Citation.] Such modifications must be reasonable, and it is for the courts to determine upon the facts of each case what constitutes a permissible change. To be sustained as reasonable, alterations of employees' pension rights must bear some material relation to the theory of a pension system and its successful operation, and changes in a pension plan which result in disadvantage to employees should be accompanied by comparable new advantages.' " ' [Citations]." (*Wilson, supra,* 52 Cal.App.4th at pp. 1132-1133, italics omitted.)

SCERS makes no argument that the change resulting from Government Code section 31840.8 is unreasonable. To the contrary, the change is reasonable, improves employees' pension rights, and relates to the theory of a pension system. Furthermore, it appears that, in reality, the change will have little effect on SCERS. An Assembly analysis of the enacting legislation commented: "Potential for increased costs to STRS and the [CERL] counties. However, since the volume of members eligible for concurrent retirement under the provisions of this bill would be very small the cost would be minimal." (Assem. Off. of Research, 3d reading analysis of Sen. Bill No. 610 (1997-1998 Reg. Sess.) Aug. 24, 1998, p. 1.) Accordingly, we reject SCERS's factually unsupported assertion Government Code section 31840.8 renders it actuarially unsound.

DISPOSITION

The judgment is affirmed.

Sims, Acting P. J., and Raye, J., concurred.