[No. B214685. Second Dist., Div. One. Aug. 3, 2010.]

ABRAHAM KHAN, Plaintiff and Respondent, v.
LOS ANGELES CITY EMPLOYEES' RETIREMENT SYSTEM, Defendant
and Appellant.

100

102

COUNSEL

Carmen A. Trutanich, City Attorney, Alan L. Manning, Assistant City Attorney, and Mary Jo Curwen, Deputy City Attorney, for Defendant and Appellant.

Richards, Watson & Gershon and Saskia T. Asamura for Plaintiff and Respondent.

OPINION

JOHNSON, J.—The Los Angeles City Employees' Retirement System (LACERS) appeals from a judgment in favor of Abraham Khan (Khan) granting his petition for writ of mandate compelling LACERS to approve his

request for concurrent deferred retirement benefits with LACERS and the Judges' Retirement System (JRS).[1] The sole issue on appeal is whether LACERS and JRS have reciprocity provisions such that Khan, a judge of the Superior Court of Los Angeles County who had worked for the City of Los Angeles (City) as a city attorney, may retire from LACERS at his higher judicial salary. We conclude they do not, and reverse and remand with directions that the trial court enter judgment in favor of LACERS.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### 1. *Allegations of Judge Khan's Petition for Writ of Mandate.*

Respondent Khan is a member of both LACERS and JRS. From approximately 1978 through 1988, Judge Khan worked in various capacities for the City, with his last position being that of deputy city attorney. Upon leaving employment with the City, Judge Khan elected not to cash out his benefits with LACERS. In 1988, Judge Khan was appointed a judge of the Los Angeles Municipal Court and was elevated to the superior court in 2000. By reason of his judicial appointments, Judge Khan was eligible to receive benefits under JRS.

In 2004, Khan applied to LACERS to determine his eligibility for concurrent retirement from LACERS and JRS at his higher judicial salary. LACERS informed him that LACERS did not have reciprocity with JRS.

On May 21, 2007, Judge Khan filed a petition for writ of mandate (Code Civ. Proc., § 1085) to compel LACERS to pay him retirement benefits based upon his judicial salary earned while a member of JRS. Judge Khan's petition alleged that pursuant to the reciprocity provisions of the statutes governing the state's Public Employees' Retirement System (PERS), and statutes governing county and city retirement systems, LACERS had established reciprocity with PERS and all other systems having reciprocity with PERS.

Judge Khan further alleged that Assembly Bill No. 1099 (2001–2002 Reg. Sess.) (Assembly Bill 1099), passed on October 2, 2001, amended section 20639 (applicable to PERS)[2] to provide that compensation earned while a

---

[1] Government Code section 75000 et seq. All statutory references herein are to the Government Code unless otherwise noted.

[2] Section 20639 provides in relevant part, "The compensation earnable during any period of service as a member of the Judges' Retirement System[ or] the Judges' Retirement System II, . . . shall be considered compensation earnable as a member of this system [(PERS)] for purposes of computing final compensation for the member, if he or she retires concurrently under both systems."

member of JRS would be considered compensation earnable by a member of PERS for purposes of computing final compensation if the member retired concurrently under both systems.[3] Khan alleged that because PERS and LACERS had reciprocity, Assembly Bill 1099 specifically extended reciprocity from JRS to LACERS, and that such amendments were retroactive as a matter of law.

Khan sought a writ of mandate commanding LACERS and PERS[4] to approve his eligibility for concurrent deferred retirement with LACERS and JRS, at such time as he elected to retire from the bench, with his benefits under both systems to be computed using his highest salary as a judge.

2. *Hearing on the Petition.*[5]

Judge Khan argued that under statutory reciprocity provisions granting reciprocal benefits to city and county agencies that had reciprocity agreements with PERS, in July 1997, LACERS and PERS entered into a reciprocal agreement. Under the applicable statutes, that agreement gave LACERS reciprocity not only with PERS, but also with all other agencies having reciprocity with PERS. To implement this agreement, the City adopted ordinance No. 171656 which amended Los Angeles Administrative Code section 4.1065 to provide for such reciprocity between LACERS and PERS.

In support of his contention that the reciprocity between PERS and LACERS extended to JRS, Judge Khan contended that Assembly Bill 1099 added the Judges' Retirement System II (JRS II) to the reciprocal provisions of PERS and, as a result, members of JRS and JRS II had reciprocity with city and county retirement systems which already had reciprocity with PERS, such as LACERS.[6] Judge Khan argued the fact that LACERS and JRS did not have a contractual agreement for reciprocity was irrelevant because this statutory scheme mandated reciprocity.

---

[3] Under section 45310.5, "When a city has established a reciprocal retirement system under this section and has received approval thereof from the Public Employees' Retirement System, then such system shall be automatically reciprocal *with all other state, local and public agencies who are members, or contracting members of the Public Employees' Retirement System or any retirement system established under the County Employees Retirement Law of 1937.*" (Italics added.)

[4] PERS administers JRS. (§ 75005.)

[5] On April 25, 2008, the Presiding Judge of the Los Angeles Superior Court issued an order recusing all judges on the Los Angeles County Superior Court. On May 23, 2008, the Judicial Council assigned the matter to Judge Geoffrey T. Glass of the Orange County Superior Court.

[6] Pursuant to section 20639, added in 1995, PERS already had a provision entitling members of JRS to use their judicial compensation for purposes of concurrent retirement from PERS. (Stats. 1995, ch. 379, § 2, p. 1955.)

In opposition, the City contended that Los Angeles Administrative Code section 4.1065 did not create reciprocity between LACERS and JRS because any reciprocity under LACERS was extended only to those retirement systems which agreed, by contract entered into pursuant to statutory provisions governing PERS and the county retirement systems, to provide reciprocal benefits to LACERS members. Furthermore, Assembly Bill 1099 unambiguously did not create statutory reciprocity with LACERS via PERS's statutory reciprocity provisions with other city and county agencies because JRS did not grant reciprocal retirement to PERS members as required by those statutes. To support its position, the City also relied on a 2007 PERS publication, When You Change Retirement Systems, that stated JRS and JRS II did not have a formal reciprocity agreement with PERS.

### 3. Trial Court Ruling.

The trial court granted Judge Khan's petition. The court found the statutory language unambiguous, and did not consider the extrinsic evidence presented by the parties in reaching its conclusion, although it noted the legislative history of Assembly Bill 1099 supported its conclusion that Assembly Bill 1099 intended to "legislate reciprocity between JRS and [PERS], notwithstanding PERS' contrary interpretation in its published materials."

Specifically, the court noted that ordinance No. 171656, adding section 4.1065 to the Los Angeles Administrative Code[7] adopted uniform reciprocal provisions, and provided members of LACERS with reciprocal benefits from any other public agency system adopting similar reciprocal provisions and that by contract agreed to extend the benefits of that system to the members of LACERS. The court found PERS and LACERS had reciprocal benefits and, under Assembly Bill 1099 because LACERS had reciprocity with PERS, it therefore had reciprocity with JRS and JRS II.

## DISCUSSION

### I. Standard of Review.

■ A writ of traditional mandamus (Code Civ. Proc., § 1085) may be used to compel the performance of a duty that is purely ministerial in nature or to correct an abuse of discretion. (*American Board of Cosmetic Surgery v. Medical Board of California* (2008) 162 Cal.App.4th 534, 547 [75 Cal.Rptr.3d 574].) The trial court and appellate court perform the same function in a traditional mandamus action, and we therefore do not undertake a review of the trial court's findings or conclusions. (*Friends of the Old Trees v.*

---

[7] The court erroneously referenced the Los Angeles Municipal Code.

*Department of Forestry & Fire Protection* (1997) 52 Cal.App.4th 1383, 1393 [61 Cal.Rptr.2d 297].) We consider the record to determine whether LACERS abused its discretion, namely, whether its decision was arbitrary, capricious, entirely lacking in evidentiary support, unlawful, or procedurally unfair. (*Bright Development v. City of Tracy* (1993) 20 Cal.App.4th 783, 795 [24 Cal.Rptr.2d 618]; see also *Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 361 [87 Cal.Rptr.2d 654, 981 P.2d 499].) Indeed, such nonadjudicatory acts "are accorded the most deferential level of judicial scrutiny." (*Pulaski v. Occupational Safety & Health Stds. Bd.* (1999) 75 Cal.App.4th 1315, 1331 [90 Cal.Rptr.2d 54].) Unless otherwise provided by law, "the petitioner always bears the burden of proof in a mandate proceeding brought under Code of Civil Procedure section 1085." (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1154 [43 Cal.Rptr.2d 693, 899 P.2d 79].) Thus, it is petitioner's burden to establish that LACERS's decision was arbitrary, capricious, entirely lacking in evidentiary support, unlawful, or procedurally unfair. (See *Fair v. Fountain Valley School Dist.* (1979) 90 Cal.App.3d 180, 187 [153 Cal.Rptr. 56].)

## II. *Principles of Statutory Construction.*

■ We review issues of statutory interpretation de novo on appeal where there are no disputed factual issues. (*Alesi v. Board of Retirement* (2000) 84 Cal.App.4th 597, 601 [101 Cal.Rptr.2d 81].) Any interpretation of compensation that would affect retirement benefits may be applied retroactively. (See *In re Retirement Cases* (2003) 110 Cal.App.4th 426, 443–445 [1 Cal.Rptr.3d 790].)

■ Our primary goal in interpreting a statute is to determine legislative intent, and such intent should be determined from the language of the statute, if possible. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) Words are to be given their usual and ordinary meaning, and we must accord significance to every word, phrase and sentence; a construction rendering some words surplusage is to be avoided. In addition, the words of the statute must be construed in context with reference to the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387 [241 Cal.Rptr. 67, 743 P.2d 1323].)

■ Where the language is clear and unambiguous, there is no need to look further. "If there is no ambiguity in the language of the statute, 'then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.' " (*Lennane v. Franchise Tax Bd.* (1994) 9 Cal.4th 263,

268 [36 Cal.Rptr.2d 563, 885 P.2d 976].) However, where the language is ambiguous, we turn to other rules of interpretation and to extrinsic sources. (*Oden v. Board of Administration* (1994) 23 Cal.App.4th 194, 201–202 [28 Cal.Rptr.2d 388].) These include the principle of *noscitur a sociis* ("it is known by its associates"), which requires us to consider whether a term may be defined by reference to the fellow members of its class. (*Blue v. Bonta'* (2002) 99 Cal.App.4th 980, 989–990 [121 Cal.Rptr.2d 483].) We may consider legislative history in construing a statute, including reports of legislative committees during the legislative process. (*Hudson v. Board of Administration* (1997) 59 Cal.App.4th 1310, 1323 [69 Cal.Rptr.2d 737].) "Committee materials are properly consulted to understand legislative intent, since it is reasonable to infer the legislators considered explanatory materials and shared the understanding expressed in the materials when voting to enact a statute." (*Oden, supra*, 23 Cal.App.4th at p. 205.)

■ Lastly, we note that the retirement board's interpretation of the Public Employees' Retirement Law (§ 20000 et seq.) is to be accorded great weight unless clearly erroneous. (*City of Sacramento v. Public Employees Retirement System* (1991) 229 Cal.App.3d 1470, 1478 [280 Cal.Rptr. 847].) However, "administrative construction of a statute, while entitled to weight, cannot prevail when a contrary legislative purpose is apparent." (*Pacific Legal Foundation v. Unemployment Ins. Appeals Bd.* (1981) 29 Cal.3d 101, 117 [172 Cal.Rptr. 194, 624 P.2d 244].) Furthermore, our Supreme Court has held that "[a]ny ambiguity or uncertainty in the meaning of pension legislation must be resolved in favor of the pensioner . . . ." (*Ventura County Deputy Sheriffs' Assn. v. Board of Retirement* (1997) 16 Cal.4th 483, 490 [66 Cal.Rptr.2d 304, 940 P.2d 891].) Nonetheless, this latter liberal rule of construction must be applied in effectuating the obvious legislative intent but "should not blindly be followed so as to eradicate the clear language and purpose of the statute and allow eligibility for those for whom it was obviously not intended." (*Barrett v. Stanislaus County Employees Retirement Assn.* (1987) 189 Cal.App.3d 1593, 1608–1609 [234 Cal.Rptr. 900].)

III. *Reciprocity Provisions.*

A. *Background.*

The Public Employees' Retirement Law (PERL; § 20000 et seq.), enacted in 1945, established PERS, a retirement system for employees of the state and participating local public agencies. (Stats. 1945, ch. 123, § 1, p. 535.) PERS was enacted "to effect economy and efficiency in the public service by providing a means whereby employees who become superannuated or otherwise incapacitated may, without hardship or prejudice, be replaced by more capable employees, and to that end provide a retirement system consisting of

retirement compensation and death benefits." (§ 20001.) County retirement plans are governed by the County Employees Retirement Law of 1937 (§ 31450 et seq.) (CERL). Cities may establish retirement plans pursuant to section 45300 et seq. (See § 45301 ["By ordinance, any city may establish a retirement system for its officers and employees and provide for the payment of retirement allowances, pensions, disability payments, and death benefits, or any of them."].)[8] JRS provides a retirement system for judges appointed prior to November 9, 1994. (§ 75000 et seq.) JRS is administered by PERS (§ 75005), is funded through contributions by the state, counties, and deductions from judges' payrolls (§§ 75101–75103), and PERS directs its investments (§ 75105). JRS does not contain any statutes referencing or creating reciprocity with other public agency retirement systems.[9]

Various statutes define reciprocity between and among PERS, counties, cities, and JRS. As described by PERS, "[r]eciprocity is an agreement among public retirement systems to allow members to move from one public employer to another public employer within a specific time limit without losing some valuable retirement and related benefit rights."[10] (PERS, When You Change Retirement Systems (2009) p. 3.) CERL notes that reciprocity encourages career public service by granting reciprocal retirement benefits to members who are entitled to retirement rights or benefits from two or more retirement systems, and delineates the financial obligations of each system and related political entities so that no system or political entity is liable for more than its just financial obligation.[11] (§ 31830.)

---

[8] Section 45300 provides, "It is the intent of this article to enable any city to adopt such a retirement system as is adaptable to its size and type." Title 4, division 5, chapter 2 provides provisions governing retirement systems adopted by cities.

[9] JRS II applies to judges appointed on or after November 9, 1994. (§ 75500 et seq.) JRS II is administered by PERS (§ 75505), and is funded through contributions by the state, counties, and deductions from judges' payrolls (§§ 75600–75602). Like JRS, JRS II does not contain any statutes referencing reciprocity with other public agency retirement systems. Judge Khan, who was appointed in 1988, would receive retirement benefits under JRS.

[10] PERS expressly notes it has reciprocity with LACERS, but not with JRS/JRS II.

[11] Section 31830 provides: "The provisions of this article are intended to encourage career public service by granting reciprocal retirement benefits to members who are entitled to retirement rights or benefits from two or more retirement systems established under this chapter or from a retirement system established under this chapter and the Public Employees' Retirement System, the State Teachers' Retirement System, or a retirement system of any other public agency of the state that has established reciprocity with the Public Employees' Retirement System subject to the conditions of Section 31840.2, and to delineate the financial obligations of each system and related political entity so that no system or political entity shall be liable for more than its just financial obligation."

■ Under PERS, reciprocity is governed by Government Code title 2, division 5, part 3, chapter 3, article 5.[12] The key provisions at issue here are sections 20351 and 20353. Section 20351[13] provides that cities and counties may enter into reciprocal agreements with PERS, provided that they give PERS the same reciprocity it gives them. This mutuality may be accomplished by ordinance in the case of a city, or by membership in a system that PERS determines has provided such mutuality by agreement. Section 20353 provides that any public agency that has entered into a reciprocity agreement with PERS pursuant to section 20351 shall be deemed to have obtained reciprocity with any other agency that has a reciprocity agreement with PERS, whether it is a city or a county.[14] In summary, these two sections require an agreement with PERS establishing mutuality under section 20351. Under section 20353, a pool of reciprocal agencies is established among those agencies having reciprocity pursuant to section 20351, namely, those public agencies having a reciprocal *agreement* with PERS.[15]

---

[12] The provisions of title 2, division 5, part 3, chapter 3, article 5 specifically define "reciprocity."

[13] Section 20351 provides that "The provisions of this part extending rights to a member of this system, or subjecting him or her to any limitation by reason of his or her membership in a county retirement system, shall apply in like manner and under like conditions to a member of this system by reason of his or her membership in any retirement system established under Chapter 2 (commencing with Section 45300) of Division 5 of Title 4 with respect to which an ordinance complying with section 43510.5 has been filed with and accepted by the board or by reason of his or her membership in a retirement system established by or pursuant to the charter of a city or city and county or by any other public agency of this state and that system, in the opinion of the board, provides a similar modification of rights and benefits because of membership in this system and with respect to which the governing body of the city, city and county or public agency and the board have entered into agreement pursuant to this section. . . ."

[14] Section 20353 provides that "Any public agency that has pursuant to the provisions of Section 20351 entered into an agreement to establish a reciprocal retirement system with this system shall be deemed to have obtained the same rights and limitations with respect to all other public agencies who have entered into those agreements and established reciprocity as well as with respect to county retirement systems and under Chapter 2 (commencing with Section 45300) of Division 5 of Title 4 that have established reciprocity with this system pursuant to Section 20351."

[15] CERL has a similar provision at section 31840.2, which provides: "The provisions of this article extending rights to a member of a county retirement system established under this chapter or subjecting him or her to any limitation by reason of his or her membership in the Public Employees' Retirement System shall apply in like manner and under like conditions to a member by reason of his or her membership in any retirement system established under Chapter 2 (commencing with Section 45300) of Division 5 of Title 4 with respect to which an ordinance complying with Section 45310.5 has been filed with and accepted by the board or by reason of his or her membership in a retirement system established by or pursuant to the charter of a city or city and county or by any other public agency of this state which system, in the opinion of the board, provides a similar modification of rights and benefits because of

In 2001, the Legislature enacted Assembly Bill 1099 to amend the reciprocity provisions of PERL and CERL. The Legislative Counsel's Digest of Assembly Bill 1099 states, "[e]xisting law establishes reciprocity between specified public retirement systems, thereby allowing a member of more than one qualifying system to use the compensation earned while a member of one of those reciprocal systems to calculate benefits under the other system, subject to specified limitations. . . . [¶] This bill would add the Judges' Retirement System II to these provisions of [PERL] and would add both the Judges' Retirement System and the Judges' Retirement System II to these provisions of [CERL]." (Legis. Counsel's Dig., Assem. Bill 1099; Stats. 2001, ch. 433.)

Assembly Bill 1099 modified section 20639[16] of PERL to read: "The compensation earnable during any period of service as a member of the Judges' Retirement System[ or] the Judges' Retirement System II . . . shall be considered compensation earnable as a member of this system for purposes of computing final compensation for the member, if he or she retires concurrently under both systems." (Stats. 2001, ch. 433, § 1.)[17] Assembly Bill 1099 did not modify JRS or JRS II to create in those systems a mirrored compensation computation provision granting members of PERS the same compensation computation benefit with JRS/JRS II.

PERS's publication, When You Change Retirement Systems, explains the benefits of moving from one reciprocal retirement system to another. The publication also "includes a list of reciprocal agencies including the public retirement systems that have established reciprocity with [PERS] by contract." LACERS is included as an agency that "ha[s] contracted with [PERS] to provide the benefits of reciprocity." PERS states that there "is no *formal* reciprocity agreement established between [PERS] and [JRS and JRS II]" (italics added), but that "the following benefits . . . apply to [PERS] members who enter employment with [JRS and JRS II] and retire on the same date under both systems," namely that "[PERS] will compute your final compensation based on your highest rate of pay under [JRS and JRS II] . . . ."

---

membership in a system established under this chapter and with respect to which the governing body of such city, city and county or public agency and the board have entered into agreement pursuant to Section 20351."

[16] Section 20639 resides in title 2, division 5, part 3, chapter 7, "Compensation."

[17] Further, Assembly Bill 1099 modified section 31840.8 of CERL to read: "The provisions of this chapter extending rights to a member of a county retirement system established under this chapter by reason of his or her membership in the Public Employees' Retirement System shall also apply to the members of . . . the Judges' Retirement System, and the Judges' Retirement System II." (Stats. 2001, ch. 433, § 4.)

B. *There Is No Reciprocity Between LACERS and JRS/JRS II.*

1. *Assembly Bill 1099 Did Not Create "Statutory Reciprocity."*

In 1996, the City and PERS began to explore reciprocity between PERS and LACERS. In August 1996, PERS advised the City that pursuant to section 20351, PERS had extended reciprocity to cities having retirement systems under section 45300 et seq. PERS advised the City it would enter into an agreement to establish reciprocity with LACERS if the City's retirement system also contained reciprocal provisions granting PERS reciprocity, and PERS provided LACERS with uniform reciprocal provisions for LACERS's use. As defined in PERS's documents, reciprocity is mutual: "[PERS] may enter into an agreement to establish reciprocity only if in its opinion the City's retirement system contains reciprocal provisions." PERS recommended the City adopt language providing that: "The purposes of these reciprocal provisions is to extend to members of other public agency retirement systems . . . which adopt similar reciprocal provisions into their retirement ordinances or plans pursuant to Sections 20351, 20353, 31840.2 and 45310.5[18] of the Government Code, and who by contract agree to extend the benefits thereof to this system, the following rights in this system . . . ."

In 1997, LACERS and PERS entered into an agreement providing for mutual reciprocity between PERS and LACERS. In July 1997, to implement the agreement, the City adopted ordinance No. 171656 to amend division 4 of

---

[18] Section 45310.5 provides, "The ordinance may provide for a modification of rights and benefits of a member because of membership in a reciprocal system similar to and under the same conditions as those provided under the County Employees' Retirement Law of 1937 and the Public Employees' Retirement Law because of membership in two or more retirement systems established by or pursuant to such laws. The ordinance shall be filed with each board administering a reciprocal system and shall become effective upon the adoption of a resolution of such administering board accepting the city system as a reciprocal system. Such modification shall apply only to a member whose termination and entry into employment resulting in a change in membership from the city system to a reciprocal system or from a reciprocal system to the city system occurs after such effective date; provided, however, that provisions relating to computation of final compensation shall apply to any other member if such provision would have applied had the termination and entry into employment occurred after such effective date.

"A reciprocal system, for purposes of this section, means a retirement system established under the County Employees' Retirement Law of 1937, the Public Employees' Retirement System, a retirement system of a city whose retirement ordinance contains the provisions authorized by this section, or a retirement system of a city or city and county established by its charter and providing for modifications of rights and benefits similar to and under the same conditions as those provided for under this section.

"When a city has established a reciprocal retirement system under this section and has received approval thereof from the Public Employees' Retirement System, then such system shall be automatically reciprocal with all other state, local and public agencies who are members, or contracting members of the Public Employees' Retirement System or any retirement system established under the County Employees Retirement Law of 1937."

the Los Angeles Administrative Code by adding section 4.1065 to provide reciprocity between LACERS and PERS. Section 4.1065 contained in relevant part PERS's uniform language regarding mutual reciprocal provisions between PERS and LACERS and any other public system that would adopt similar reciprocal provisions pursuant to Government Code sections 20351, 20353, 31840.2 and 45310.5. (L.A. Admin. Code, § 4.1065, subd. (a).)[19]

■ Here, the trial court concluded that because JRS/JRS II acquired compensation rights from PERS under section 20639, that statute in effect also gave them reciprocal rights with LACERS under section 20353 in spite of the fact section 20639 contains none of the prerequisite contract or mutuality requirements of section 20351.

■ We disagree with the trial court's conclusion of reciprocity. Under section 20353, a pool of reciprocal agencies is established only among those agencies having reciprocity pursuant to section 20351, namely, those public agencies having a reciprocal *agreement* with PERS. On the other hand, section 20639 provides nothing more than compensation equivalence between JRS/JRS II and PERS for purposes of computing retirement pay; it did nothing to bring the judges' retirement systems within the pool of reciprocal agencies created by sections 20351 and 20353, which are those agencies that acquire reciprocity with each other even though they have not directly contracted with each other. The trial court's logical leap from section 20639 (compensation equivalence) to 20353 (full reciprocity between reciprocal systems) is not supported in the statutory language of PERL.

■ Thus, while the Legislative Counsel's Digest of Assembly Bill 1099 provides "[e]xisting law establishes reciprocity between specified public retirement systems," and states Assembly Bill 1099's intention to add JRS/JRS II to the reciprocity provisions of PERL and CERL, Assembly Bill 1099 did not amend PERL to accomplish this stated purpose in the fashion Judge Khan argues. Although Assembly Bill 1099 evidenced an intent to "establish reciprocity" for members of JRS/JRS II under PERL and CERL, the statutes as enacted did not do so. "In considering the purpose of legislation, statements of the intent of the enacting body contained in a preamble, while not conclusive, are entitled to consideration. [Citations.]

---

[19] Los Angeles Administrative Code section 4.1065 provides in relevant part: "(a) Uniform Reciprocal Provisions. The purpose of these reciprocal provisions is to extend to the members of other public agency retirement systems (hereinafter 'reciprocal system') which adopt similar reciprocal provisions into their retirement ordinances or plans pursuant to Sections 20351, 20353, 31840.2 and 45310.5 of the Government Code, and who by contract agree to extend the benefits thereof to the Los Angeles City Employees Retirement System (hereinafter 'this system'), the following rights in this system, provided such member enters into employment under this system or the reciprocal system within six months of terminating his or her employment under such other or this system." (Boldface omitted.)

Although such statements in an uncodified section do not confer power, determine rights, or enlarge the scope of a measure, they properly may be utilized as an aid in construing a statute." (*People v. Canty* (2004) 32 Cal.4th 1266, 1280 [14 Cal.Rptr.3d 1, 90 P.3d 1168].)

▮▮▮ Our examination of the statutory language of PERL establishes that section 20639 does not confer complete reciprocity independent of the requirements of sections 20351, and therefore JRS/JRS II are not entitled to acquire reciprocity with LACERS under section 20353 by virtue of their reciprocity with PERS. Section 20639 confers an extracontractual one-way extension of PERS *compensation* to the members of JRS/JRS II based on their judicial salary. It says nothing about *reciprocity*. The reason is simple: True reciprocity is mutual. Section 20353, the statute under which Judge Khan seeks to find reciprocity with LACERS, requires compliance with section 20351. Section 20351 requires an agreement with PERS such as the one LACERS entered into; JRS/JRS II have no such agreement with PERS. Section 20351 unequivocally requires a two-way agreement between retirement systems; it does not contemplate the one-way grant of compensation benefits to JRS/JRS II in section 20639.

▮▮▮ Instead, section 20639 contrasts with section 20351, PERL's statute establishing reciprocity, which requires an underlying agreement to be made between PERS and the city or county agency desiring reciprocal benefits (or in the case of a city, an ordinance may be enacted). A section 20351 agreement must grant benefits and obligations in both directions: reciprocity is granted where (1) a city enacts an ordinance pursuant to section 45310.5 (creating a retirement system reciprocal with CERL and PERS) or (2) a municipal or county system "provides a similar modification of rights or benefits because of membership in [PERS] and with respect to which the governing body of the city, city and county or public agency and the board have entered into agreement pursuant to this section." (§ 20351.) Under section 20353, all cities and counties giving PERS reciprocity in turn have reciprocity with each other, creating a pool of reciprocal retirement plans. Without compliance with section 20351, there can be no pool of reciprocity under section 20353.

JRS/JRS II did not have any agreement under section 20351 to bring them within the provisions of 20353, which in turn would have given them reciprocity with PERS and all other agencies having reciprocal agreements with PERS. Thus, under the guidelines of sections 20352 and 20351, JRS/JRS II have no reciprocity with LACERS. Significantly, JRS/JRS II do not grant reciprocity to PERL under section 20639 or anywhere in JRS or JRS II, a requirement for reciprocity under sections 20351 and 20353. Not insignificantly, Assembly Bill 1099 added a provision to PERL and CERL

that judges must have six years of service to be eligible for a benefit compensation calculation under PERS. (§ 75528.)[20] There is no mutual service requirement under JRS/JRS II for persons who have been members of PERS.

Furthermore, in addition to the lack of mutuality, section 20639 provides for a limited and very specific type of benefit under PERS, that "[t]he compensation earnable during any period of service as a member of the Judges' Retirement System[ or] the Judges' Retirement System II, . . . shall be considered compensation earnable as a member of this system [PERS] for purposes of computing final compensation for the member, if he or she retires concurrently under both systems." This is not true reciprocity because pension rights consist of a bundle of benefits and limitations, and the full reciprocity provisions of PERL under sections 20351 and 20353 extend to more than a compensation calculation permitting the use of the final highest salary from one system to be used in another system. Instead, pension rights also include minimum retirement age limitations, vesting requirements, rules governing calculation of benefits, and provision of ancillary benefits, including health coverage, disability insurance and life insurance.[21]

This distinction between compensation as a specific characteristic of reciprocity (as in § 20639) and complete participation in a reciprocal system (as in §§ 20351 and 20353) is manifest in the statutory framework. Section 20639 resides in the portion of PERS relating to compensation (tit. 2, div. 5, pt. 3, ch. 7), not the provisions of PERS relating to reciprocal rights (tit. 2, div. 5, pt. 3, ch. 3, art. 5). Sections 20351 and 20353 are placed in title 2, division 5, part 3, chapter 3, article 5. An interpretation of section 20639 to confer complete reciprocity would render this critical and presumably intentional distinction in statutory placement meaningless, contrary to well-accepted principles of statutory construction. (See *City of Brentwood v. Central Valley Regional Water Quality Control Bd.* (2004) 123 Cal.App.4th 714, 722 [20 Cal.Rptr.3d 322] [the organization of the division, chapters, and articles of a statutory scheme is an aid to understanding its purpose]; *People v. Hull* (1991) 1 Cal.4th 266, 272 [2 Cal.Rptr.2d 526, 820 P.2d 1036].)

As a practical matter, if section 20639 creates reciprocity the way Judge Khan argues, LACERS, and any other agency contracting for reciprocity with

---

[20] Section 75528 provides, "A judge must have a minimum of six years of judicial service to be eligible for benefits provided by retiring concurrently from this system and the Public Employees' Retirement System or a retirement system subject to the County Employees Retirement Law of 1937 pursuant to Section 20639 or 31840.8."

[21] PERS's publication, When You Change Retirement Systems, notes that member contribution rates based on age at entry apply in some systems, but not others; some retirement systems place restrictions on refunds of member contributions; and there is no provision for PERS disability retirement where the member is also eligible for a disability benefit from JRS/JRS II.

PERS, would at the same time be contracting for nonreciprocal compensation provisions with JRS/JRS II. Essentially, they would be bound to an obligation to which they did not agree when they entered into contracts under section 20351. As a result, Judge Khan's argument would extend reciprocity far beyond the scope contemplated in the specific reciprocal provisions of the statutory scheme.

In conclusion, the trial court's reasoning contained a logical flaw. It assumed that because PERS and LACERS had reciprocity under section 20353 and JRS/JRS II earnings could be used for retirement from PERS under section 20639, this meant JRS/JRS II were within section 20353. If this logical derivation were correct, the legislature certainly could have amended sections 20351 and 20353 to weave JRS/JRS II into the fabric of reciprocal systems. Instead, the legislature used a separate statute. Furthermore, if the legislature, in crafting Assembly Bill 1099, had intended section 20639 to confer true reciprocity as set forth in sections 20351 and 20353, but wanted to exempt JRS/JRS II from section 20351's express contract requirement, it could have amended section 20639 to specify that 20639 created full reciprocity notwithstanding any other provisions of PERL. This the legislature did not do. We must read each sentence of a statute not in isolation, but in light of the entire statutory scheme. (*Absher v. AutoZone, Inc.* (2008) 164 Cal.App.4th 332, 339 [78 Cal.Rptr.3d 817].) Therefore, under the statutory scheme as currently constructed, to obtain full reciprocity with PERS, JRS and JRS II must comply with section 20351 and enter into an agreement with PERS that provides PERS members with the same rights and benefits from JRS/JRS II that PERS gives members of those systems. If the legislature intended to create true reciprocity between JRS/JRS II and PERS by statute without the necessity of an agreement bringing them within sections 20351 and 20353, it presumably would have amended PERL to explicitly grant such reciprocity.[22]

### 2. *Provisions Relating to CERL Do Not Control Our Analysis.*

Judge Khan relies on the provisions pertaining to CERL that were added by Assembly Bill 1099 to support his contention that Assembly Bill 1099 created statutory reciprocity with LACERS and JRS similar to that in section 20353 based on each entity's reciprocity with PERS.

First, he contends CERL section 31830 supports his position of full reciprocity between PERS and JRS/JRS II by virtue of section 20639 because

---

[22] Although we need not, and did not, rely on extrinsic evidence, we note our conclusion is consistent with PERS's interpretation of its reciprocity benefits. PERS's publication states that while there is no agreement of reciprocity with JRS/JRS II, members of JRS/JRS II obtain certain reciprocal benefits from PERS, including the right to retire concurrently from PERS at their judicial salary.

section 31830 sets forth the legislative intent of encouraging career public service through the provision of reciprocal benefits. However, aside from the important fact it applies solely to CERL, not PERS, section 31830 is part of CERL's provisions on reciprocal benefits, and section 31830 specifically refers to those systems that have established reciprocity with PERS subject to the conditions of 31840.2. Indeed, section 31840.2 tracks the language of section 20351, and requires those parties with whom reciprocity is sought to have complied with section 20351 itself. Thus, like sections 20351 and 20353 applicable to PERS, section 31830 sets up a contractually based statutory reciprocity between counties, cities and PERS under CERL. We therefore do not find the legislative intent expressed in section 31830 transmutes section 20639 into a statute providing full reciprocity along the lines of sections 20351 and 20353.

Second, Judge Khan relies on *Maffei v. Sacramento County Employees' Retirement System* (2002) 103 Cal.App.4th 993 [127 Cal.Rptr.2d 279] (*Maffei*). *Maffei* addressed whether an employee who transferred to the State Teachers' Retirement System (STRS) before both the enactment of Assembly Bill 1099 and the changes it made to section 31840.8 was nonetheless entitled to reciprocity with the Sacramento County Employees' Retirement System (SCERS), which was governed by CERL. (103 Cal.App.4th at pp. 997–998.) *Maffei* is inapposite. Aside from the fact it applied to a CERL system, the issue in *Maffei* was the question of retroactive application of Assembly Bill 1099 to CERL; *Maffei* assumed without deciding that section 31840.8 statutorily mandated automatic reciprocity between STRS and CERL, and found that under CERL's provision at section 31705 providing that "[t]he retirement allowance shall be calculated according to the provisions of this chapter as they exist at the time of the commencement of the retirement allowance," the employee would be entitled to reciprocity if at the time of her retirement SCERS and STRS were reciprocal plans. (103 Cal.App.4th at pp. 997–998.) Even if we were to adopt *Maffei* for a proposition not decided therein, the language of section 31840.8 differs from its PERS analog at section 20639. As discussed above, section 31840.8 resides in CERL's "Reciprocal Benefits," while section 20639 of PERS resides in PERS's provisions on "Compensation," not "Reciprocity."

 The Legislative Counsel's Digest of Assembly Bill 1099 makes a distinction between PERS and CERL. It states: "Under [PERS], compensation earnable during any period of service as a member of specified retirement systems is considered compensation earnable as a member of [PERS] for purposes of computing final compensation for the member, as specified." On the other hand, the Legislative Counsel's Digest reference to CERL states: "Under [CERL], the average compensation during any period of service as a member of a reciprocal retirement system is considered compensation earnable for a member for purposes of determining final compensation, as

specified." (Legis. Counsel's Dig., Assem. Bill 1099; Stats. 2001, ch. 433.) The Legislative Counsel's Digest states that the bill is intended to add JRS/JRS II to the "provisions" of PERL relating to compensation. The Legislative Counsel's Digest distinguishes PERL's "specified" systems from CERL's "reciprocal" systems. The legislature does not use the word "reciprocal" with respect to PERL. This distinction indicates a legislative intent that Assembly Bill 1099 have a different effect on PERL and CERL; this choice of words is more than coincidence. It is not for this court to attempt to discern why the legislature would seek to affect the two systems in different ways; however, the Legislative Counsel's Digest deliberate choice of words is manifest in an intentionally different statutory organization of PERL and CERL with respect to the compensation provisions of JRS and JRS II. (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826 [25 Cal.Rptr.2d 148, 863 P.2d 218] [legislature's choice of words is the best indicator of its intent]; *People v. Duran* (2001) 94 Cal.App.4th 923, 941 [114 Cal.Rptr.2d 595] [same].) Thus, analogy to CERL is inapposite.[23]

## DISPOSITION

The judgment of the superior court is reversed, and the matter is remanded with directions to enter judgment in favor of LACERS. Appellant is to recover its costs on appeal.

Rothschild, J., concurred.

**MALLANO, P. J.,** Dissenting.—I would affirm the judgment because Assembly Bill No. 1099 (2001–2002 Reg. Sess.) (Assembly Bill 1099) provides that judges who retire under both the Judges' Retirement System (JRS) and the Los Angeles City Employees' Retirement System (LACERS) are entitled to have their LACERS retirement benefits calculated using their highest salary earned under the systems.

In 1997, the City of Los Angeles and the Public Employees' Retirement System (PERS) entered into an agreement pursuant to Government Code sections 20351 and 20353[1] whereby retirees of both systems would be entitled to have their retirement benefits calculated using their highest salary earned under the systems.

In 2001, Assembly Bill 1099 amended section 20639 to add the Judges' Retirement System II: "The compensation earnable during any period of

---

[23] At oral argument LACERS questioned the constitutionality of the Legislature's forcing reciprocity on a separately chartered municipality by way of amendments to PERL. This issue was not briefed and is not necessary to our decision.

[1] All section references are to the Government Code.

service as a member of the Judges' Retirement System, the Judges' Retirement System II, the Legislators' Retirement System, or the Defined Benefit Program of the State Teachers' Retirement Plan shall be considered compensation earnable as a member of [PERS] for purposes of computing final compensation for the member, if he or she retires concurrently under both systems. . . ."

The Legislative Counsel's Digest of Assembly Bill 1099 states in part as follows: "Existing law establishes reciprocity between specific public retirement systems, thereby allowing a member of more than one qualifying system to use the compensation earned while a member of one of those reciprocal systems to calculate benefits under the other system, subject to specified limitations. Under the Public Employees' Retirement Law, compensation earnable during any period of service as a member of specified retirement systems is considered compensation earnable as a member of the Public Employees' Retirement System for purposes of computing final compensation for the member, as specified."

The following syllogism demonstrates that judges who retire under both JRS and LACERS are entitled to have their LACERS retirement benefits calculated at their highest salary under the systems.

*JRS earnings are treated as PERS earnings (§ 20639).*

*Retirees from both PERS and LACERS are entitled to have their retirement benefits calculated at their highest salary earned under the systems (per agreement between PERS and LACERS).*

*Ergo, judges who retire under both JRS and LACERS are entitled to have their LACERS retirement benefits calculated using their highest salary under the systems.*

LACERS argues this cannot be so because it has no reciprocal agreement with JRS, and JRS would not consider the salary earned under LACERS in determining JRS benefits. That may be the case, but it is beside the point because the Legislature has provided that JRS retirees be treated the same as PERS retirees who—by agreement with LACERS—are entitled to have their benefits calculated using the highest salary earned under the systems.[2]

LACERS attacks in a footnote the letter from the Judicial Council of California supporting Khan's position as "a misleading letter from a former

---

[2] At oral argument, LACERS contended that our state Constitution would forbid the Legislature from doing so, but this matter was not raised in the trial court or in LACERS's brief on appeal, so neither the majority nor I discuss the issue.

JRS employee (improperly provided on stationary [*sic*] from the Judicial Council of California)." In turn, Khan attacks a declaration of a PERS employee supporting LACERS's position as "simply a staff opinion rendered as to a disputed matter with a specific applicant" written by a nonlawyer "not . . . qualified to render a legal opinion."

The two documents are not determinative of this appeal because, given the legislative intent clearly expressed in the Legislative Counsel's Digest of Assembly Bill 1099 and the plain meaning of section 20639, Khan is entitled to retire from both LACERS and JRS and have his LACERS retirement calculated at his highest salary. Accordingly, I would affirm.

Respondent's petition for review by the Supreme Court was denied November 17, 2010, S186213. Kennard, J., was of the opinion that the petition should be granted.