Filed 3/27/24  Doe v. Regents of the U. of Cal. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JOHN DOE,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>  Defendant and Respondent. | B327252<br><br>(Los Angeles County<br>Super. Ct. No.20STCP01381) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mitchell L. Beckloff , Judge.  Affirmed.

Hathaway Parker, Mark M. Hathaway, Jenna E. Parker for Plaintiff and Appellant.

Quarles & Brady, Sandra L. McDonough for Defendant and Respondent.

After his employment at the University of California, Los Angeles was terminated, appellant Dr. David Baron[1] filed a complaint pursuant to the Personnel Policies for Staff Members (PPSM) promulgated by respondent Regents of the University of California. The relevant policy, PPSM-70, provides that written complaints must be filed within 30 calendar days of an involuntary separation. Baron filed his complaint 12 days beyond that timeframe. The university denied the complaint as untimely filed. Baron appealed the decision to the system level, where it was upheld.

Baron subsequently filed a petition for writ of mandamus. He alleged he was not given proper notice of the filing deadline and the university abused its discretion by failing to address his post-deadline request for an extension and by failing to extend the deadline. The trial court ordered an interim remand to clarify whether Procedure 70, the regulation implementing PPSM-70, gave the university discretion to consider Baron's belated extension request. After the university submitted a letter indicating that it had consistently interpreted Procedure 70 to afford it discretion only when an extension request was filed within the deadline, the court denied the writ.

In this appeal, Baron contends the university had discretion to extend the deadline and abused that discretion by refusing to exercise it. He further contends due process requires that he receive a post-dismissal hearing to "clear his name," that

_____

[1]     Baron initially filed the petition under the pseudonym "John Doe," but the trial court granted the Regents of the University of California's motion to strike the pseudonym and require Baron to proceed under his true name.

he exhausted his administrative remedies, and that any failure to exhaust is excused. We affirm.

## FACTUAL BACKGROUND

Baron is a medical doctor who was employed as the Senior Executive Director of UCLA's Arthur Ashe Student Health and Wellness Center. In early August 2016, someone reported to UCLA's Title IX office that they saw what they believed to be pornographic images in Baron's office, on his personal computer. Baron was not told about the report, but later that month he and "Everyone in Ashe" received a general "Reminder about appropriate workplace behavior" via email. It stated, "please keep in mind that while incidental personal use of computers is allowable and even expected (during breaks and lunch), visiting websites that may have content that is offensive to others is not allowed. In other words, if your screen is in a public space, or is visible/may be visible to anyone but you, please refrain from visiting sites that others may find offensive."

On November 8, 2018, UCLA's Title IX office sent Baron a letter notifying him that "it was alleged that in 2016, 2017, and 2018, you viewed images of a sexual nature on your laptop during work hours and that several employees were exposed to these images in the course of their work with you." The letter stated that "[i]f this allegation is true, the reported behavior could constitute sexual harassment in violation" of the University of California Policy for Sexual Violence and Sexual Harassment (SVSH). The letter further stated that the Title IX office had "initiated a complaint on this matter" and would be conducting an investigation consisting of "interviews and gathering evidence regarding the allegation and determining from the information collected whether a violation of the SVSH Policy occurred based

3

on the preponderance of the evidence." The letter advised Baron that investigations are "typically completed within 60 business days," and he would receive written notice of the outcome and a redacted copy of the report when it was complete. Baron was put on investigatory leave.

Due at least in part to staffing changes in the Title IX office—the initial investigator left the university, and her replacement died—the investigation was handled by three different individuals. Baron ultimately was interviewed, in the presence of his counsel, on March 25, 2019. In the final investigation report, issued April 26, 2019, the Title IX office "found by the preponderance of the evidence that (1) Dr. Baron engaged in unwelcome conduct of a sexual nature; (2) that the conduct was severe and pervasive; that the images were unwelcome by the witnesses; and (3) [*sic*] that the images and Dr. Baron's conduct interfered with the way the witnesses interacted with Dr. Baron and how they conducted business in his office." It further concluded there was sufficient evidence to find that Baron violated the SVSH policy. Baron responded to the report and findings through counsel on May 7, 2019.

On June 5, 2019, the university's vice chancellor sent Baron a Notice of Intent to Terminate his employment, effective June 15, 2019. The Notice of Intent to Terminate stated that Baron had "the right to respond either orally or in writing to this Notice of Intent to Terminate within eight (8) calendar days by contacting Anthony Solana, Jr., Director of Employee & Labor Relations," and provided Solana's email address and phone

4

number.  On June 14, 2019, Baron timely responded and requested a *Skelly*[2] meeting.

On June 26, 2019, Baron and his counsel attended a *Skelly* meeting at which the university's Employee Relations Consultant Sara Haider and Assistant Dean of Administration and External Relations Vina Chin were present.  Baron asserts that these university representatives orally told him "that if the *Skelly* review was not in his favor there would be a further hearing, but no deadline or further procedure were specified."  He further asserts that "[t]hey did not tell me how to schedule the hearing and I assumed such information would be forthcoming."  On July 11, 2019, Assistant Dean Chin sent a letter to UCLA Vice Chancellor Monroe Gorden, Jr., summarizing the *Skelly* meeting and recommending that the Notice of Intent to Terminate be upheld.  The letter did not mention any discussion of further hearings.

On July 16, 2019, Vice Chancellor Gorden sent Baron a letter terminating his employment effective that day.  As relevant here, the letter stated: "You have the right to a review of this action in accordance with PPSM Policy 70 (Complaint Resolution).  If you have questions regarding your appeal rights, you may contact Ms. Kathleen Shiroma, Employee Relations Consultant, at [phone number] or [email address]."  The footnote

---

[2]     *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194, 215-216 (*Skelly*) requires that civil-service employees be given notice of proposed disciplinary action, the reasons for the action, a copy of the charges and the written materials upon which they are based, and an opportunity to respond either orally or in writing.  A *Skelly* meeting is "an informal probable-cause-type proceeding." (Asimow et al., Cal Practice Guide: Administrative Law (The Rutter Group 2019) ¶ 3:196, p. 3-33.)

omitted from the quotation contained a URL that the parties agree was supposed to lead to the PPSM-70. However, Baron asserts the link was "dead" and did not provide access to PPSM-70. There is no evidence in the record indicating that Baron or his counsel contacted or attempted to contact Shiroma to inquire about the link, PPSM-70, or any other aspect of the termination or review process.

Baron asserts that "a few weeks later," he "undertook to find a working link" because he "still had not received notice of a hearing on the termination decision." He further asserts "[i]t was only then that he learned that he was required to submit a PPSM-70 complaint in order to initiate review of the University's termination decision."[3] Indeed, PPSM-70 states, under the boldface heading "Timeliness," "The employee must file a written complaint within 30 calendar days after the date on which the employee knew or could reasonably be expected to have known of the event or action that gave rise to the complaint, or within 30 calendar days after the date of involuntary separation from University employment, whichever is earlier." PPSM-70 further provides that a "complaint is considered 'filed' on the date it is postmarked, personally delivered, faxed, or emailed." The parties agree that Baron was terminated on July 16, 2019, and that 30 calendar days from that date was August 15, 2019.

On August 27, 2019, 42 calendar days after his July 16, 2019 termination, Baron emailed a PPSM-70 complaint to "UCLA LABOR RELATIONS." In the complaint, Baron alleged that the university failed to utilize progressive discipline, did not provide

---

[3] In a declaration submitted to and considered by the trial court, Baron stated that he "determined on my own how to access the PPSM-70 information."

6

him a copy of the materials supporting his termination, and discriminated against him based on his gender. He also alleged that Gorden "abused his discretion in finding that [Baron] had engaged in misconduct, based solely on the allegations that were unsupported by the weight of the evidence in a proceeding utterly devoid of fairness of [*sic*] Due Process and against the law." Baron further alleged that the university's "Title IX process was flawed, unlawful, and utterly lacking in due process" in eleven different ways. Baron asserted that as a result of his termination, he suffered financial, reputational, and emotional damage.

In a section titled "Timeliness," Baron noted that Procedure 70, which governs administration of PPSM-70, states that "The CHR ELR [Campus Human Resources Employee and Labor Relations] Director shall administer this policy and shall determine whether a complaint is timely and qualifies for review at any step of the process. The CHR ELR Director or the HS ELR [Health System Employee and Labor Relations] Director may extend the deadlines contained in this procedure." Baron continued, "The Title IX investigation in this case lasted for over five months, with three 60 business-day extensions given to Title IX investigators, even though Ms. Chris Carrubba-Katz, UC Title IX Principal Investigator, interviewed no witnesses and met with Mr. [*sic*] Baron only once. The five-month delay is far in excess of the 60 business-day timeframe in the SVSH Policy and the UC Sexual Violence and Sexual Harassment Investigation and Adjudication Framework for Staff and Non-Faculty Personnel. [¶] Complainant requests an extension of just 12 calendar days (8 business days) to submit his PPSM-70 complaint. The Notice of Termination to Complainant from Monroe Gorden did not specify

the number of days within which a grievance needed to be filed, and Complainant was not provided a copy of the PPSM-70 policy or the Complaint Form. Additionally, the link included in the Notice of Termination to the applicable procedures was a dead link. There is no prejudice to any party caused by the delay, as Complainant submits his complaint well within the fifteen (15) calendar day extension of time to correct or resubmit a defective or flawed complaint. Please accept this complaint for review."[4]

On September 4, 2019, Employee and Labor Relations Director Solana sent Baron a letter acknowledging receipt of his complaint. The letter continued, "The timely filing deadline to submit a PPSM 70 complaint is contained in PPSM Policy 70.III.B.5. It states, in part, 'The employee must file a written complaint within *30 calendar days* after the date on which the employee knew or could have reasonably be expected to have known of the event or action that gave rise to the complaint, or within 30 calendar days after the date of involuntary separation from the University, *whichever is earlier*.' (Emphasis added). Accordingly, the deadline to submit a PPSM complaint contesting your July 16, 2019 Notice of Termination was Thursday, August 15, 2019. For this reason, your complaint is untimely filed and is denied for formal processing."

The next paragraph of the letter provided instructions on how to appeal the decision: "If you disagree, you may file an appeal with the University of California's Office of the President

---

[4]     Procedure 70 states: "If the complaint has been filed within established time limits, the CHR ELR Director or HS ELR Director shall grant up to fifteen (15) calendar days extension of time in order to permit a defective or flawed but timely complaint to be corrected and resubmitted."

8

regarding my determination that your complaint is ineligible for review under PPSM 70.  If you wish to appeal, you must submit a complete record of the complaint within twenty (20) calendar days from the date of this letter by utilizing one of the following methods," namely email, fax, mail, or in-person delivery.  The letter also included the contact information for Employee Relations Consultant Haider, and invited Baron to contact her with any questions.

Exactly 20 days later, on September 24, 2019, Baron, through counsel, emailed his appeal to the University of California's Office of the President.  In the appeal, Baron asserted that he "was not provided or given proper notice" of the 30-day deadline for PPSM-70 complaints.  He argued that he "made a good faith attempt to comply with every deadline in this process," that "a brief delay in filing the PPSM 70 complaint causes no prejudice to any party," and that a "12 calendar day (8 business day) filing delay should not be grounds to invalidate an employee's complaint."  He also pointed out that his "request for an extension was not addressed by Director Solana, Jr."

Marie-Ann Hairston, the Systemwide Employee Relations Director, responded by letter dated December 4, 2019.  The letter stated that Hairston had reviewed the documents and information Baron sent and "agree[d] with the determination made by UCLA ELR that the allegations in [Baron's] complaint were untimely filed."  It further stated, "This concludes the review process for this appeal."

Approximately one week later, on December 13, 2019, Baron emailed Hairston a "Request for Reconsideration, PPSM 70 Appeal."  Baron did not receive any response to this request.  The Regents represent in their brief that "the request for

9

reconsideration was not processed" because "the decision was final and there were no more appeal routes available to Baron."

## PROCEDURAL HISTORY

On April 15, 2020, Baron filed a petition for writ of mandamus in the trial court. He filed the operative verified first amended petition on January 25, 2021. Baron alleged that the university denied him due process during the Title IX investigation and disciplinary proceedings and arbitrarily denied his PPSM-70 complaint without addressing his request for an extension. Baron sought relief under both Code of Civil Procedure[5] section 1085 and section 1094.5, though he now concedes that only section 1085 is applicable.

In his brief in support of the petition, Baron argued that the university abused its discretion by providing itself extensions of time during the Title IX investigatory process but denying him "the same consideration." He argued the university further abused its discretion by failing to "provide any basis for its decision to deny Dr. Baron's request for an extension," by failing to give him "appropriate notice as to how to appeal," and by failing to give him notice "that requests for extensions would not be granted." The Regents answered and opposed the petition. They argued that the university's interpretation of its policies and procedures was entitled to strong deference, that Baron was given proper notice of the appeal process, and that Baron failed to show that the university abused its discretion in denying his untimely filed PPSM-70 complaint. Baron filed a reply.

The trial court heard argument on the matter on November 17, 2021. During the hearing, the court expressed concern about

---

[5] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

whether the university "even saw the request to extend," because "there's no reference to it in any of the responses to the appeal from U.C.L.A. or even the Regents." The court observed that a failure to exercise discretion is an abuse of discretion, and stated that it was inclined to order an "interim remand" to ascertain whether the university considered the extension request and, if so, why it was denied. After hearing additional argument, the trial court made an interim order directing the university to exercise its discretion to consider Baron's request for a deadline extension or describe how it previously exercised that discretion.

On February 3, 2022, Solana emailed Baron and his counsel a letter in accordance with the interim order. After briefly summarizing the pertinent events of the case, Solana provided the following explanation of how he handled Baron's complaint:

"As UCLA's Director of Employee and Labor Relations, I am responsible for the intake of PPSM 70 complaints. I am also responsible for interpreting and applying UCLA Procedure 70, which provides UCLA-specific procedural guidelines for PPSM 70 complaints. UCLA Procedure 70.III.E states, 'the CHR ELR Director or the HS ELR Director may extend the deadlines contained in this procedure.'

"As the CHR ELR Director since 2014, I am familiar with this campus procedure and it has been my responsibility to interpret and apply it in numerous cases at UCLA, including yours. UCLA Procedure 70.III.E only provides me authority to grant an extension of the initial filing deadline when the employee both requests an extension prior to the 30-day period expiring and demonstrates good cause for such an extension. It does not give me the authority to consider complaints that are

11

filed after the deadline, regardless of the reason. This is in keeping with the portion of UCLA Procedure 70, which authorizes me to grant an extension of time to correct a 'defective or flawed but timely complaint.'

"Indeed, in the seven plus years that I have served as Director, I have never granted a request for a retroactive extension of the PPSM 70 submission deadline after it has passed. Under UCLA Procedure 70, I did not and do not have discretion to extend the 30-day filing deadline, as you never requested an extension of the deadline prior to its expiration date, so that both your complaint and your request for an extension were untimely under campus procedures."

The parties filed Solana's letter and supplemental briefing thereon. In his brief, Baron argued that the plain language of PPSM-70 and Procedure 70 gave Solana the discretion to extend the deadline. He further argued that Procedure 70 "is silent on a good cause requirement, is silent on the timing of a request, and does not require that an employee make a request in order for Mr. Solana to extend a deadline." The Regents responded that the letter "shows Director Solana did not have discretion," that Solana's interpretations of PPSM-70 and Procedure 70 were reasonable and entitled to deference, and that Baron failed to demonstrate a basis for writ relief.

The trial court held another hearing on the matter on October 12, 2022. The court denied the writ petition for the reasons stated in its written tentative decision, which it adopted as its final ruling. In that ruling, the court concluded that "PPSM-70 is clear. Certain time deadlines apply to such written complaints," and "[t]here can be no dispute Petitioner did not timely file his complaint (i.e., appeal) under UCLA's controlling

12

policy, PPSM-70." The court further concluded that "UCLA's decision that Petitioner did not timely file his PPSM-70 Complaint is therefore not arbitrary or capricious; it is consistent with Respondent's policies." The court explained that matters are considered closed under PPSM-70 when the 30-day deadline passes, and "PPSM-70 does not provide a manner for reopening a concluded and closed matter." The court rejected Baron's reliance on Procedure 70's allowance of a 15-day extension to cure technical problems as well as his tit-for-tat argument about deadline extensions in the Title IX investigatory process. It also rejected his contentions that he did not receive appropriate notice of the appeal deadline or extension policy. The court did not consider Baron's substantive arguments about due process because it found that he "failed to exhaust his administrative remedies by failing to timely file an appeal UCLA's [*sic*] July 16, 2019 termination decision." The court filed the judgment on January 19, 2023.

Baron timely appealed.

## DISCUSSION

### I. Standard of Review

Under section 1085, "A writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins." (§ 1085, subd. (a).) To be entitled to a writ of mandate under section 1085, a petitioner must demonstrate: (1) the respondent has a clear, present, and usually ministerial duty to act; and (2) the petitioner has a clear, present, and beneficial right to performance of that duty. (*Kavanaugh v. West Sonoma County Union High School District* (2003) 29 Cal.4th 911, 917.) "Normally, mandate will not lie to control a public agency's

13

discretion, that is to say, force the exercise of discretion in a particular manner.  However, it will lie to correct abuses of discretion." (*County of Los Angeles v. City of Los Angeles* (2013) 214 Cal.App.4th 643, 654.)

The trial court reviews an agency's action to determine whether it was arbitrary, capricious, unlawful, entirely lacking in evidentiary support, contrary to established public policy, or procedurally unfair.  (*Vallejo Police Officers Association v. City of Vallejo* (2017) 15 Cal.App.5th 601, 611 (*Vallejo*).)  The court may not substitute its judgment for that of the agency; even if reasonable minds may disagree regarding the agency's action, its determination must be upheld if it is not arbitrary, capricious, or lacking in evidentiary support.  (*Id.* at p. 612; *McGill v. Regents of University of California* (1996) 44 Cal.App.4th 1776, 1786.)

We perform the same function as the trial court in a traditional mandamus action, and therefore we review the agency's decision and not the trial court's findings or conclusions. (*Khan v. Los Angeles City Employees' Retirement System* (2010) 187 Cal.App.4th 98, 105-106.)  Baron bears the burden of establishing that the university's decision was arbitrary, capricious, unlawful, entirely lacking in evidentiary support, contrary to established public policy, or procedurally unfair.  (*Id.* at p. 106; *Vallejo*, *supra*, 15 Cal.App.5th at p. 611.)

## II.    Analysis

Baron contends that the university had discretion to extend the PPSM-70 complaint filing deadline and abused that discretion by failing to exercise it.  We disagree.

PPSM-70 provides that complaints must be filed "within 30 calendar days after the date on which the employee knew or could reasonably be expected to have known of the event or action

that gave rise to the complaint, or within 30 calendar days after the date of involuntary separation from University employment, whichever is earlier." The PPSM is a uniform systemwide policy. However, it provides that "[a] designated local official will administer this policy," and "will determine whether a complaint is timely." It further provides that "[l]ocal procedures must specify the deadlines for appeal at each step in the process. If an employee does not appeal by those deadlines, the complaint will be considered resolved and closed on the basis of the last University response."

Procedure 70 is UCLA's local procedure implementing PPSM-70. It echoes the 30-day filing deadline set forth in PPSM-70. It also provides that "The CHR ELR Director or the HS ELR Director shall administer this policy and shall determine whether a complaint is timely and qualifies for review at any step of this process. The CHR ELR Director or the HS ELR Director may extend the deadlines contained in this procedure." Several pages later, it provides that "[i]f the complaint has been filed within established time limits, the CHR ELR Director or HS ELR Director shall grant up to fifteen (15) calendar days extension of time in order to permit a technically flawed but timely complaint to be corrected and resubmitted." It contains no further relevant provisions about deadlines, extensions, or timeliness.

Baron contends that the "plain, commonsense language of the policy confers discretion on Director Solana to extend deadlines contained in Procedure 70," and no language in PPSM-70 or Procedure 70 deprives Solana of that discretion after the 30-day filing period expires. He emphasizes that the "policies do not state anywhere that the University may only extend deadlines when a request is made before the deadline lapses," "do

15

not state the University lacks discretion to consider an untimely PPSM-70 appeal," and do not "state that a 'closed' complaint cannot be reopened."

The Regents interpret PPSM-70 and Procedure 70 differently. They emphasize that PPSM-70 provides that complaints will be considered closed if no appeal is made by the deadline, and no provision for reopening a closed appeal exists. They further assert that, as a matter of common sense, a period that is expired cannot be extended. The Regents also point out that Solana has interpreted PPSM-70 and Procedure 70 consistently for years, and contend that their interpretation is entitled to deference. The Regents have the better argument.

The California Constitution establishes the Regents as a "public trust . . . with full powers of organization and government." (Cal. Const., art. IX, § 9, subd. (a).) Accordingly, the Regents may exercise "quasi-legislative powers," and "'[p]olicies established by the Regents as matters of internal regulation may enjoy a status equivalent to that of state statutes.'" (*Campbell v. Regents of the University of California* (2005) 35 Cal.4th 311, 320 *(Campbell).)* They also have "'the general rule-making or policy making power in regard to the University [citation], and are (with exceptions not material here) fully empowered with respect to the organization and government of the University.'" (*Id.* at p. 321; see also *Kim v. Regents of the University of California* (2000) 80 Cal.App.4th 160, 165 ["Regents have rulemaking and policymaking power in regard to the University; their policies and procedures have the force and effect of statute."].)

"Generally, the rules that govern interpretation of statutes also govern interpretation of administrative regulations."

16

(*Berkeley Hillside Preservation v. City of Berkeley* (2015) 60 Cal.4th 1086, 1097.) Thus, we begin with the plain language of PPSM-70 and Procedure 70, "giving effect to its usual meaning and avoiding interpretations that render any language surplusage." (*Ibid.*) We do not consider the language in isolation, however; "rather, we look to the statute's entire substance in order to determine its scope and purposes. [Citation.] That is, we construe the words in question in context, keeping in mind the statute's nature and obvious purposes. [Citation.] We must harmonize the statute's various parts by considering it in the context of the statutory frame as a whole. [Citation.] If the statutory language is unambiguous, then its plain meaning controls. If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids...." (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1107.) One such extrinsic aid is the Regents' own interpretation of the PPSM and Procedures, which we may also use even if the policy language is unambiguous. (See *Akella v. Regents of the University of California* (2021) 61 Cal.App.5th 801, 815-816 (*Akella*).) "The degree of deference to an agency's interpretation of a statute or regulation is contextual"; "the deference accorded to an agency's interpretation 'should be dependent in large part upon whether the agency has a "'comparative interpretative advantage over the courts'" and on whether it has arrived at the correct interpretation.'" (*Id.* at p. 816.) We also consider whether the interpretation "is both knowledgeable and sensitive to the needs of [*sic*] department and university population to which it applies," and "'whether the agency has adhered consistently to the interpretation at issue and whether there was an opportunity

17

for comment to be made on that interpretation.'" (*Id.* at pp. 816-817.)

Here, PPSM-70 unambiguously sets forth a 30-day filing deadline and states that a complaint filed after that point will be considered resolved and closed. These provisions, coupled with Procedure 70's mandate that the CHR ELR Director or HS ELR Director "shall grant up to fifteen (15) calendar days extension of time in order to permit a technically flawed but timely complaint to be corrected and resubmitted" underscore the importance of timeliness. While Procedure 70 generally allows for the extension of deadlines, it does not suggest that deadlines that have already expired may be revived. Limiting extensions in this fashion is a matter of common sense. "[O]nce the period has expired there is nothing left to extend. Common sense compels the conclusion that a trial court cannot extend a time period that has already expired." (*People v. American Surety Insurance Co.* (1999) 75 Cal.App.4th 719, 727.) Moreover, allowing the Director to extend the time to appeal after a matter has been deemed resolved and closed would undermine the complaint and review process set forth in PPSM-70 and Procedure 70; there would be no finality for either the complainant or the university. Limiting the Director's extension authority to Complaints filed within the 30-day appeal period is consistent with PPSM-70's deadline and Procedure 70's cure for technically defective appeals "filed within the established time limits."

The Regents' (and Solana's) interpretation is consistent with this common sense approach. It also appears sensitive to the need for the expedient resolution of personnel matters, and has been consistently applied throughout Solana's tenure as the

18

CHR ELR Director.  We accordingly afford substantial deference to that interpretation and find no abuse of discretion here.

Baron argues that his request for an extension of time is analogous to a request for relief under section 473, subdivision (b), which authorizes a trial court to "relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect."  He does not point to any language in either PPSM-70 or Procedure 70 giving similar authorization to Solana or any other official; there is none.  Instead, he claims that he "relied upon the assurances given to him during the *Skelly* Meeting [*sic*] … that a hearing would be held on the termination decision," and asserts that the Notice of Termination did not properly inform him what he needed to do to request a hearing."  This argument is not persuasive.  The Notice of Termination provided Baron, a medical doctor who was represented by counsel, with the name of the pertinent policy and the name and contact information of a person he could contact with any questions.  Rather than acting on this information, Baron waited "a few weeks" before locating PPSM-70 "on [his] own."

Baron also argues that "due process requires the University to hold a post-dismissal hearing" because "there was no opportunity under the University's administrative procedures to raise legal arguments regarding the constitutionality of the University's procedures" and his termination subjected him to "public embarrassment, shame, and harm to his reputation" akin to the respondent in *Zumwalt v. Trustees of the California State Colleges* (1973) 33 Cal.App.3d 665 (*Zumwalt*).  Baron's assertion that he lacked the opportunity to raise legal arguments is not

19

well taken.  PPSM-70 provides that very opportunity; it also requires that a complaint be timely filed to take advantage of it.

His reliance on *Zumwalt* is similarly misplaced.  There, English professor Zumwalt was removed from his position of department chair. Zumwalt was not given a reason for the removal, which was accomplished in part by campus police changing the locks on his office door.  (*Zumwalt, supra*, 33 Cal.App.3d at p. 669.)  The appellate court concluded that the "choice of method for Dr. Zumwalt's removal exposed him to notoriety in the academic community, damaged his reputation and tended to handicap him in career advancements during the remainder of his academic career," thus entitling him to "a hearing at which the administration would be required to prove, if it could, justification for the procedure and at which petitioner might prove, if he could, lack of justification.  He has never had that hearing and is now entitled to it." (*Id.* at p. 680.)  The court found a basis for the hearing "in the constitutional guarantee of due process of law," not in "any of the statutes or rules covering disciplinary or tenure proceedings," which it found inapplicable. (*Ibid.*)  Here, Baron received notice of the university's policy regarding the viewing of potentially offensive content in the workplace, participated in the Title IX investigation and subsequent termination proceedings, and had an opportunity to challenge the decision and clear his name in accordance with PPSM-70 if he believed the proceedings were illegal or against policy.

Baron finally contends that he "is entitled to court review of the termination decision" because he exhausted his administrative remedies or is excused from doing so.  The trial court concluded that he failed to exhaust his administrative

20

remedies by failing to timely appeal the termination decision. We agree.

Generally, where a statute provides an administrative remedy, a petitioner must seek relief from the administrative body and exhaust this remedy before pursuing legal remedies. (*Campbell*, *supra*, 35 Cal.4th at p. 321.) This fundamental procedural rule is a jurisdictional prerequisite to judicial relief and is binding on all courts. (*Ibid.*) It is in place to mitigate damages, recognize the quasi-judicial expertise of administrative tribunals, and promote judicial economy. (*Id.* at p. 322.) Here, PPSM-70 provided Baron with the administrative remedy of a hearing *if* he timely filed a complaint. Baron's failure to do so is a failure to exhaust his administrative remedies. Baron asserts this failure should be excused "because the University misled Dr. Baron or failed to inform him of an available remedy." While "a government entity will be estopped from asserting as a defense a failure to exhaust administrative remedies when a government agent has negligently or intentionally caused a party to fail to comply with a procedural precondition to recovery" (*Shuer v. County of San Diego* (2004) 117 Cal.App.4th 476, 486), Baron's allegation of such conduct here is unpersuasive. He asserts that the university "failed to provide [him] with any information concerning requesting review or a deadline for filing a PPSM-70 Complaint." As discussed above, the Notice of Termination letter apprised Baron of the applicable policy and identified a person who could answer any questions he might have. While this may have "seem[ed] intentionally vague" to Baron, there is no indication the university provided him with inaccurate information, led him astray, or in any way "caused [him] to fail to comply with a procedural precondition to recovery." Accordingly,

21

Baron's failure to exhaust his administrative remedies is not excused.

## DISPOSITION

The judgment of the trial court is affirmed. The Regents may recover their costs of appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, ACTING P. J.

We concur:


MORI, J.


ZUKIN, J.